# STEPHEN MYSEROS

## V.

# DEAN R. SISSLER

Record No. 880286

January 12, 1990

Present: Carrico, C.J., Compton, Stephenson, Russell, Whiting, and Lacy, JJ., and Harrison, Retired Justice

*Lowry J. Miller (Miller, Miller & Kearney,* on briefs), for appellant.

*Peter C. DePaolis (Koonz, McKenney & Johnson,* on brief), for appellee.

CHIEF JUSTICE CARRICO delivered the opinion of the Court.

A jury awarded the plaintiff, Dean R. Sissler, a verdict of $100,000 in the trial of his negligence action against the defendant, Stephen Myseros. The trial court entered judgment on the verdict, and we granted Myseros an appeal to decide whether Sissler's purported damages are compensable under the rule of *Hughes* v. *Moore,* 214 Va. 27, 197 S.E.2d 214 (1973).[1]

In *Hughes,* we held that "where the claim is for emotional disturbance *and* physical injury resulting therefrom, there may be recovery for negligent conduct . . . provided the injured party properly pleads and proves by clear and convincing evidence that his physical injury was the natural result of fright or shock proximately caused by the defendant's negligence." *Id.* at 34, 197 S.E.2d at 219 (emphasis in original). We are convinced that Sissler did not prove a compensable injury under the *Hughes* v. *Moore* rule, and, accordingly, we will reverse.[2]

---

[1] Myseros admitted in the trial court that his negligence caused the accident, so liability is not an issue on appeal. Myseros denied, however, that his negligence caused Sissler's damages.

[2] The trial court ruled that Sissler was required to prove his damages pursuant to the *Hughes* v. *Moore* rule and instructed the jury accordingly. Sissler has not questioned the

The record shows that about 2:15 a.m. on Saturday morning, July 21, 1984, Dean R. Sissler was operating a tank truck in a northerly direction on Interstate Highway 495, the Capital Beltway, in Fairfax County. Owned by the Exxon Corporation, Sissler's employer, the truck was filled with 8900 gallons of gasoline and had been loaded at the company's nearby Newington terminal in Fairfax County.

As Sissler approached the Braddock Road interchange, he felt a bump and heard the sound of "metal hitting metal." Realizing his truck had been struck, he brought the vehicle to a stop in the traffic lane in which he had been traveling. It turned out that his vehicle had been struck in the rear by an automobile operated by Stephen Myseros, who, as Sissler discovered some time later, was driving in an intoxicated condition.

Sissler set the brakes on his truck, turned on its emergency lights, and set a block against one of its wheels. He then inspected the truck's hose and piping system to determine whether there were any gas leaks. Detecting none, he went to the rear of the truck with his flashlight in hand and tried "to slow [cars] down" as they approached him. He observed Myseros's automobile sitting in the highway "[a]bout a quarter of a mile" away.

One car "came right at" Sissler, and he had to run into the median strip to avoid being struck. He returned to his truck to "protect" it, and he was forced twice more to run into the median strip "to save [his] life."

Although the truck was fully operable and readily movable, Sissler left the vehicle on the highway because a "company policy" required him to "stop and leave it until a [company] supervisor gets there." When a state trooper arrived on the scene and ordered Sissler to remove the truck, Sissler at first refused, but later acquiesced.

court's ruling or the instruction in any way, and the instruction has become the law of the case. Yet, Sissler now cites *Naccash v. Burger*, 223 Va. 406, 290 S.E.2d 825 (1982) (parents of fatally diseased child permitted to recover damages for emotional distress where negligently performed blood test deprived parents of opportunity to make informed decision regarding abortion). Sissler argues that *Naccash* permits him to recover for his emotional distress even though he may not have proved he suffered physical injury. However, we review cases on the theories upon which they were tried in the court below. *Lacks* v. *Bottled Gas Corp.*, 215 Va. 94, 96, 205 S.E.2d 671, 673 (1974). Hence, we will not consider Sissler's *Naccash* argument. In any event, *Naccash* is confined to its particular facts and is inapposite.

The damage to the truck was minimal, consisting only of a ladder being "pushed in." Sissler himself was not injured, having no "bumps or bruises or anything like that." When he reported to work on the following Monday, however, he felt "scared" and "was nervous, sweaty, [and] dizzy," so his supervisor sent him home. Then, on a trip to Baltimore, Maryland, a few days later, he "started to get sick," his head "started going around," and he "started sweating." He could not drive the truck "in that condition" and telephoned for someone to come from the Newington terminal to return him and his vehicle to Virginia.

Shortly thereafter, Sissler came under psychiatric care, and he was still under such care at the time of trial. According to the testimony of two of the psychiatrists, Drs. Berger and Buongiorno, Sissler suffered from a post-traumatic stress disorder which evolved into "a generalized anxiety disorder with some depressive features" and a "phobic reaction." Dr. Berger opined that Sissler's condition was aggravated by the fact he had been struck by an intoxicated driver.

According to Dr. Berger, Sissler's disorder was accompanied by sweating, dizziness, nausea, difficulty in sleeping and breathing, constriction of the coronary vessels, two episodes of chest pain, hypertension, unstable angina, an electrocardiogram showing marked ischemia, loss of appetite and weight, change in heart function, and problems with the heart muscle. Dr. Berger stated that, as a result of his condition, Sissler was disabled from all work. Dr. Buongiorno said that Sissler had developed a phobia about driving any motor vehicle and thus was disabled from driving a truck for a living. Both witnesses related Sissler's condition to the accident in which he was involved on July 21, 1984.

Much of the debate between the parties focuses upon the question whether Sissler proved that he suffered physical injury within the meaning of *Hughes* v. *Moore*. Myseros contends that all Sissler proved were the "typical symptoms of an emotional disturbance," which do not constitute physical injury under the *Hughes* v. *Moore* rule.

Sissler contends that he did prove he suffered physical injury, and he refers to specific pages of the appendix where, he says, his psychiatric witnesses provided such proof. The record, however, does not support Sissler's contention.

In the first reference, Sissler's counsel asked Dr. Berger whether he found that Sissler's "complaints of physical injury"

were "consistent or inconsistent with the anxiety" the doctor saw in his patient. Dr. Berger, however, evaded the "physical injury" aspect of the question and stated merely that the "*symptoms* are consistent with a pattern of high level *anxiety*." (Emphasis added.)

In the next reference, Sissler's counsel asked Dr. Berger whether he was able to form an opinion "as to the relationship of the accident and these physical things that Mr. Sissler was experiencing such as headaches, dizziness, [and] chest pain." Again evading comment on the physical aspect of the question, the doctor responded that "these are typical . . . *manifestations* of *anxiety* . . . and . . . examples of *symptoms* that I recounted before." (Emphasis added.)[3]

■ The final reference involves Dr. Buongiorno's appearance on the witness stand. During this testimony, the closest connection with the issue at hand occurred when Sissler's counsel asked the doctor whether he had obtained any information "which revealed the existence of panic attacks." The doctor replied that Sissler "often did describe *symptoms*" and that what Sissler was experiencing "are parts of the *symptoms* which made up his problem." (Emphasis added.) But Dr. Buongiorno did not say, and it cannot be inferred from his testimony as a whole, that Sissler's "problem" consisted of physical injury. Indeed, if any sensible inference can be drawn from the doctor's testimony, the inference would have to be to the contrary, that is, Sissler's "problem" consisted of his anxiety disorder.

■ It is obvious that Sissler considers proof of the symptoms of his anxiety disorder to be sufficient as proof of physical injury. He says on brief that his "physical injuries were manifestations of the anxiety caused by the accident, . . . squarely [comporting] with [*Hughes* v. *Moore*]." What *Hughes* v. *Moore* requires, however, and what this case lacks, is clear and convincing evidence of "symptoms" or "manifestations" of *physical injury*, not merely of an underlying emotional disturbance.

■ Hence, exactly as Myseros contends, all that Sissler proved were the "typical symptoms of an emotional disturbance," for which there can be no recovery under *Hughes* v. *Moore* in the absence of resulting physical injury. Accordingly, we will reverse

---

[3] Sissler makes other references to Dr. Berger's testimony, but they are no more supportive of Sissler's contention that he proved he suffered physical injury than the references contained in the text.

the judgment of the trial court, set aside the jury verdict, and enter final judgment here in favor of Myseros.

*Reversed and final judgment.*