## CIRCUIT COURT OF FAIRFAX COUNTY

S. R.

v.

INOVA Healthcare Services,
d/b/a Fairfax Hospital, et al.

June 1, 1999

Case No. (Law) 174290

BY JUDGE STANLEY P. KLEIN

This matter is before the Court on Defendants' Demurrer to Plaintiff's Amended Motion for Judgment. On February 1, 1999, Plaintiff, S.R., filed her Amended Motion for Judgment claiming injury arising from various acts alleged to constitute invasions of Plaintiff's privacy. The Amended Motion for Judgment names the following individuals and entities as Defendants', INOVA Healthcare Services, d/b/a Fairfax Hospital; INOVA Healthcare Services; INOVA Health Systems Foundation; Fairfax Hospital System, Inc. (collectively, "INOVA Defendants"); Dorothy Lippolt, R.N.; Joyce Brendel, R.N.; and Alexandria Hospital. The Amended Motion for Judgment sets forth seven counts as follows: Count I, Violation of Virginia Code § 8.01-399 (all Defendants); Count II, Violation of Virginia Code § 2.1-378 (Alexandria Hospital and INOVA Defendants only); Count III, Breach of Contract (INOVA Defendants only); Count IV, Negligent Infliction of Emotional Distress (all Defendants); Count V, Invasion of Privacy (all Defendants); Count VI, Intentional Infliction of Emotional Distress (all Defendants); Count VII, Violation of Virginia Code § 18.2-152.5, Computer Invasion of Privacy, (all Defendants). For the reasons set forth in this opinion, the Court sustains the

120

Demurrer to Counts I, II, III, IV, and VI and overrules the Demurrer to Counts V and VII.

## I. *Background*

On August 8, 1998, Plaintiff filed a ten count Motion for Judgment setting forth claims for Violation of Virginia Code § 8.01-399; Violation of Virginia Code § 37.1-84.1; Violation of Virginia Code § 2.1-284.1; Breach of Contract; Negligent Infliction of Emotional Distress; Defamation; Invasion of Privacy; Intentional Infliction of Emotional Distress; Violation of Virginia Code § 18.2-152.5; and Punitive Damages, respectively. On January 8, 1999, a hearing was held before Judge Michael P. McWeeny on Defendants' Demurrer to the Motion for Judgment. On January 26, 1999, Judge McWeeny entered an order sustaining the Demurrer to Counts I, III, and V with leave to amend granted; sustaining the Demurrer to Count II without leave to amend; overruling the Demurrer to Counts IV and VII, declining to rule on Count VI due to its having been nonsuited; declining to rule on Count IX because the Demurrer to this count was withdrawn; and sustaining the Demurrer to Count X with leave to amend the Motion for Judgment to add a claim for punitive damages to any surviving count. On February 1, 1999, Plaintiff filed her Amended Motion for Judgment to which Defendants have demurred.[1]

As alleged in the Amended Motion for Judgment, at all times relevant to these proceedings, Plaintiff was a health care professional employed with the psychiatric unit at INOVA-Fairfax Hospital. In August of 1997, Plaintiff sought medical treatment from and was admitted to the psychiatric unit at Alexandria Hospital. Plaintiff claims that her decision to seek treatment at Alexandria Hospital was a deliberate attempt to ensure the confidentiality of her treatment and to keep such treatment "from the prying eyes of her co-workers at the INOVA-Fairfax Hospital psychiatric unit." *Amended Motion for Judgment,* at ¶ 6. Plaintiff contends that despite these efforts to ensure the privacy of her treatment, she was injured when, during her admission and stay at Alexandria Hospital, Defendants Lippolt and Brendel:

---

[1] The INOVA Defendants and Alexandria Hospital demurred to Count VII arguing that Plaintiff had failed to set forth facts sufficient to establish a respondeat superior relationship between any of the institutional Defendants and Defendants Lippolt and Brendel. In support of this contention, they asserted that the Amended Motion for Judgment erroneously identified Lippolt's and Brendel's employer as INOVA Health Care Systems Foundation. At oral argument before this Court on April 9, 1999, the Court granted Plaintiff leave to amend to rectify this apparent misnomer.

and others currently unknown, in the scope of their employment, conspired to and did in fact learn of the whereabouts and admitting medical condition of the Plaintiff. Undisclosed and unknown employees at Alexandria Hospital also revealed sensitive and confidential privileged information about the Plaintiff to the INOVA-Fairfax Hospital Employees.

*Amended Motion for Judgment*, at ¶ 8. Plaintiff further contends that employees at both Alexandria and INOVA-Fairfax Hospital divulged personal and confidential information to persons unconnected with her care. *See, Amended Motion for Judgment*, at ¶ 9. Finally, Plaintiff asserts that Defendants wrongfully accessed and allowed to be accessed the PHAMIS computer system to learn and retrieve personal information about the Plaintiff. *See, Amended Motion for Judgment*, at ¶ 11. The PHAMIS system is described as a computerized medical records retrieval system linking Defendant hospitals to a single data bank which stores privileged medical, financial, and personal information regarding any and all patients who have sought advice or treatment at any INOVA facility. *See, Amended Motion for Judgment*, at 12.

## II. *Analysis*

### A. *Count I, Violation of Virginia Code § 8.01-399*

Virginia Code § 8.01-399 sets forth rules governing the testimony of physicians in civil actions. The section reads, in relevant part as follows:

> Except at the request or with the consent of the patient, no duly licensed practitioner of any branch of the healing arts shall be required to testify in any civil action, respecting any information which he may have acquired in attending, examining or treating the patient in a professional capacity.

Va. Code § 8.01-399. The remainder of the section delineates exceptions to this general rule and prohibits attorneys engaged in civil proceedings from obtaining such information without the patient's consent. *See id*. Defendants have demurred to this Count, arguing § 8.01-399 sets forth evidentiary standards concerning the release of medical records in the context of judicial proceedings and has no application in an extra-judicial setting. *See Demurrer to Amended Motion for Judgment*, at ¶ 1. Plaintiff responds that in *Fairfax Hosp. v. Curtis*, 245 Va. 437 (1997), the Virginia Supreme Court interpreted

this code provision to allow a statutory cause of action for wrongful disclosure of privileged patient information. Plaintiff's reliance on *Curtis* in this count is misplaced.

In *Curtis*, the Virginia Supreme Court considered, *inter alia*, whether, under Virginia *common law*, a plaintiff may assert a cause of action in tort for wrongful disclosure of confidential information gained during the course of treatment and answered in the affirmative. *See, Curtis*, 254 Va. at 442. Nothing in the *Curtis* decision, however, supports the proposition that Virginia Code § 8.01-399 applies outside the context of judicial proceedings or that a violation of this statute provides the basis for a statutory cause of action. Rather, the Court's analysis of § 8.01-399 in *Curtis* was limited to whether a hospital's receipt of notice of a pending malpractice claim was sufficient to place the patient-litigant's medical condition at issue, thereby allowing the release of medical records pursuant to that Code section.[2]

Under well-established principles of statutory construction, when analyzing a statute, a court must assume that "the legislature chose, with care, the words it used ... and [courts] are bound by those words when [they] interpret the statute." *City of Virginia Beach v. ESG Enterprises, Inc.*, 243 Va. 149, 153 (1992) (citations omitted). The plain and unambiguous meaning of Virginia Code § 8.01-399 demonstrates that it is intended to govern evidentiary matters relating to communications between physicians and their patients and does not accord a statutory cause of action arising from extra-judicial disclosures of such communications. As the Court in *Curtis* explained, § 8.01-399 is "merely a rule of evidence." *See, id.*, at 443 (*quoting, Pierce v. Caday*, 244 Va. 285, 290 (1992)). Accordingly, the Demurrer to Count I is sustained, and that count is dismissed.

## B. *Count II, Violation of Virginia Code § 2.1-378*

On April 9, 1999, the Court heard oral argument on this Demurrer. At that time, counsel for Plaintiff withdrew her opposition to the Demurrer to this Count. Therefore, the Demurrer to this count is sustained, and Count II is dismissed.

---

[2] In 1993, Virginia Code § 8.01-399 was amended. In *Curtis*, the pre-amendment version of that section applied and allowed, but did not compel, disclosure of medical treatment records when the physical or mental condition of the patient was "at issue" in a civil action. The present version of the Code also retains this limitation. The decision whether to require disclosure lies with the trial court. *See* Va. Code § 8.01-399 (1950, as amended, 1993); *Curtis*, 254 Va. at 443.

## C. *Count III, Breach of Contract*

Count III of the Amended Motion for Judgment claims damages arising from an alleged breach of contract by the INOVA Defendants. Plaintiff's theory of recovery is based on her contention that as a resident of Fairfax County, she is a third-party beneficiary of contracts entered into between Fairfax County and the INOVA Defendants. On February 19, 1999, Judge MacKay entered an agreed order granting Defendants' Motion to Crave Oyer of the relevant contracts. These contracts are lease agreements under which Fairfax County agreed to seventy-five-year leases of the Fairfax Hospital and Mount Vernon hospital sites to the INOVA Defendants in exchange for INOVA's agreement to provide quality community-based health care in these facilities. The second contract, entered into in January of 1991 ("the 1991 Agreement"), expressly superseded the first contract. *See, Agreement of January 1991*, at ¶ 21. Paragraph 2 of that contract reads in relevant part:

> FHS agrees that it will operate its health care facilities in a manner which meets the requirements for continued accreditation or certification under the standards of appropriate governmental programs or other nationally recognized accrediting agencies.

*Id*. at ¶ 2. The Amended Motion for Judgment alleges that INOVA is accredited through the Joint Commission on the Accreditation of Hospital Organizations ("JCAHO") and that under JCAHO accreditation standards, "[m]edical records shall be confidential, secure, current, authenticated, legible, and complete." *Amended Motion for Judgment*, at ¶ 5. Plaintiff contends that as a resident of Fairfax County, the 1991 Agreement inures to her benefit and that INOVA's failure to ensure the confidentiality of her patient records amounts to a breach of that contract.

Defendants demur to this count arguing that Plaintiff's claimed status as a third-party beneficiary is no more than a "bald assertion." Defendants assert that, at best, Plaintiff is an incidental beneficiary of the 1991 Agreement, and incidental contract beneficiaries are not recognized as third-party beneficiaries under Virginia law. Moreover, as Plaintiff was a patient of Alexandria Hospital, Defendants contend that the 1991 Agreement cannot possibly confer a benefit on the Plaintiff in this context. Plaintiff responds that the language of the 1991 Agreement evinces a clear and definite intent to confer a benefit, in the form of quality local health care, to all the citizens of Fairfax County.

Under Virginia law, when a demurrant has successfully craved oyer, a court ruling on the demurrer may properly consider the facts alleged to be

amplified by any written agreement made a part of the record. *See Ward's Equipment v. New Holland America, Inc.*, 254 Va. 379, 382 (1997). Hence, a court may ignore a party's factual allegations that are contradicted by the terms of authentic unambiguous documents which are properly a part of the pleadings. *Id.* at 382-83 (citations omitted).

The gravamen of a third-party beneficiary claim is that the parties to an agreement intended to confer a benefit upon that third party and that the agreement was subsequently breached. *See Copenhaver v. Rogers*, 238 Va. 361, 367 (1989). A person who benefits merely incidentally from a contract between others may not proceed on a cause of action for its breach. *See MNC Credit Corp. v. Sickels*, 255 Va. 314, 320 (1998). Under Virginia law, a party claiming status as a third-party beneficiary must demonstrate that the contract "clearly and definitely intended" to confer a benefit upon him. *See, Allen v. Lindstrom*, 237 Va. 489, 500 (1989). The 1991 Agreement contains a number of recitations which express the intention of Fairfax County to facilitate "the provision of high quality, accessible community based health care ... for the benefit of all residents of Fairfax County ... ." *Agreement of January 1991*, at ¶ 2. However even if the 1991 Agreement supported a third-party beneficiary cause of action for residents of Fairfax County who receive medical care at INOVA facilities within Fairfax County, the instant case presents no such scenario. Plaintiff was treated at Alexandria Hospital, which is neither located in Fairfax County, nor a party to the 1991 Agreement. Thus, Plaintiff's third party beneficiary claim appears to rest on her status as a resident of Fairfax County, rather than her status as a patient at an INOVA facility within Fairfax County. Plaintiff therefore invites the Court to rule that a reasonable trier of fact could determine that Fairfax County and the INOVA Defendants "clearly and definitely intended" to confer a benefit upon any resident of Fairfax County who receives treatment at *any* medical facility from which INOVA employees could access a patient's medical records. No reasonable interpretation of the 1991 Agreement would allow the trier of fact in this case to so decide. The Virginia Supreme Court has expressly recognized that "under traditional rules, it will no doubt be difficult for a litigant ... to meet the requirements of third-party beneficiary claims." *Copenhaver v. Rogers*, 238 Va. at 371. The Court finds that these requirements have not been sufficiently alleged in the Amended Motion for Judgment. Accordingly, the Demurrer to Count III is sustained, and that count is dismissed.

## D. *Count IV, Negligent Infliction of Emotional Distress*

Count IV sets forth a claim for negligent infliction of emotional distress. Plaintiff contends that Defendants' disclosure of her admission to the psychiatric unit at Alexandria Hospital proximately caused her physical and emotional injuries. *See, Amended Motion for Judgment,* at ¶ 33. Plaintiff further claims that Defendants "acted with a willful and wanton disregard for the rights" of Plaintiff, evincing a callous disregard for the privacy of patients at the INOVA facilities and a tolerance for inappropriate curiosity about patients' confidential medical records. *Id.* at ¶ 34.

Under Virginia law, to recover on a claim of negligent infliction of emotional distress, the plaintiff must properly plead and prove by clear and convincing evidence that she suffered physical injury as the result of fright or shock caused by a defendant's negligence, as well as an unbroken chain of causal connection between the alleged negligent act, the emotional disturbance, and the physical injury. *See, Myseros v. Sissler,* 239 Va. 8, 9 (1990); *Hughes v. Moore,* 214 Va. 27, 34 (1973); *Naccash v. Burger,* 223 Va. 406, 415 (1982). The resulting injury must present symptoms or manifestations of physical injury, as opposed to an underlying emotional disturbance. *Myseros,* 239 Va. at 11. Manifestations of anxiety are insufficient to establish this injury requirement. *Id.*

S.R. alleges physical injuries in the form of "severe headaches, loss of appetite, insomnia, nausea, [and] crying fits." *See, Amended Motion for Judgment,* at ¶ 33. In *Myseros,* the plaintiff alleged experiencing post-traumatic nervous disorder after the truck he was driving was hit by the defendant's automobile. *Myseros,* 239 Va. at 10. Although the damage to the truck was minimal and the plaintiff suffered no immediate physical injury, he later developed a disorder accompanied by "sweating, dizziness, nausea, difficulty in sleeping and breathing, construction of the coronary vessels, two episodes of chest pain, hypertension, unstable angina, an electrocardiogram showing marked ischemia, loss of appetite and weight, change in heart function, and problems with the heart muscle." *Id.* at 8. The Supreme Court of Virginia held that these alleged injuries were no more than symptoms of an emotional disturbance and set aside the jury's verdict awarding the plaintiff damages for negligent infliction of emotional distress. *Id.* at 12-13. Plaintiff herein alleges symptoms similar to and arguably less severe than he plaintiff's in *Myseros.* The Court finds the allegations of physical injury in the Amended Motion for Judgment in Count IV to be insufficient to support a claim for negligent infliction of emotional distress.

At oral argument, Plaintiff asserted that under *Fairfax Hosp. v. Curtis*, 254 Va. 437 (1997), a litigant may maintain a cause of action for negligent infliction of emotional distress, even in the absence of physical injury. The Court does not agree. In *Curtis*, the Supreme Court of Virginia held that a health care provider owes a duty to the patient not to disclose information gained from the patient during the course of treatment without the patient's authorization and that a violation of this duty gives rise to a common law action in tort. *Id*. at 645. As a patient whose personal medical information is wrongfully disseminated to third parties may experience some degree of humiliation, embarrassment, and hurt, the Virginia Supreme Court held that there is no logical reason to refuse recovery of such emotional distress damages. *Id*. at 647. However, although *Curtis* stands for the proposition that emotional distress may serve as a *measure* of damages under a separate tort of invasion of privacy, it does not purport to overrule the Virginia Supreme Court's myriad cases requiring a sufficient allegation of physical injury to state a claim for negligent infliction of emotional distress. Claims for negligent infliction of emotional distress lie "within a class which is not favored," and "court[s] should allow no recovery in a doubtful case." *Bowles v. May*, 159 Va. 419, 438 (1932). This count fails to allege sufficient facts to support a necessary element of this disfavored tort. Accordingly, the Demurrer is sustained, and Count IV is dismissed.

### E. *Count V, Invasion of Privacy*

Count V of the Amended Motion for Judgment sets forth a claim for invasion of privacy against all Defendants. In support of her claim, Plaintiff asserts a constitutionally protected right to privacy as well as a breach of a common law duty owed to her as a patient to safeguard her medical records and the personal information contained therein.

Defendants demur to this count arguing that Plaintiff's failure to allege state action on the part of any Defendant renders this Count deficient.[3] Defendants further contend that Virginia law does not recognize a cause of action for invasion of privacy. Because the Court finds that Virginia common law clearly supports a cause of action for unauthorized disclosure of private patient information, it need not reach the issue of state action.

---

[3] The Supreme Court of the United States has long held that there is a clear distinction between deprivation of constitutional rights by the state and purely private conduct against which the Fourteenth Amendment affords no protection. *See, e.g., Hermitage Methodist Homes v. Dominion Trust Co*, 239 Va. 46, 54 (1990) (*citing, Jackson v. Metropolitan Edison Co*, 419 U.S. 345, 349 (1974)).

In *Fairfax Hosp. v. Curtis*, 254 Va. 437 (1997), the Virginia Supreme Court expressly recognized that a health care provider owes the patient a duty of reasonable care. *See Curtis*, 254 Va. at 442. Included within that duty is the obligation to safeguard the confidentiality of information regarding the patient which was communicated to or discovered by the health care professional during the course of treatment. *See id*. The court held that a violation of this duty gives rise to an action in tort. *See id*. Count V of the Amended Motion for Judgment contains ample allegations of the existence of a duty on the part of all Defendants to preserve confidential information regarding the Plaintiff as a patient at Alexandria Hospital and a breach of that duty. Consequently, the Demurrer to Count V is overruled.

## F. Count VI, Intentional Infliction of Emotional Distress

Count VI sets forth a claim of intentional infliction of emotional distress. Plaintiff contends that Defendants Lippolt and Brendel, acting within the scope of their employment with INOVA, knew or should have known that disclosure of information relating to Plaintiff's psychiatric admission and treatment would cause emotional distress. *Amended Motion for Judgment,* ¶¶ 43, 44. Plaintiff avers that Defendants' conduct was outrageous and intolerable, particularly in light of the heightened concerns over privacy and lack of computer security, and that Defendants' conduct was the direct and proximate cause of Plaintiff's emotional distress. *Id*. at ¶¶ 45, 46. Plaintiff further claims that Defendants, individually and collectively, acted with a willful and wanton disregard for Plaintiff's rights and that Defendants INOVA and Alexandria Hospital both failed to make necessary changes in the PHAMIS system to protect against the divulgence of personal, sensitive, and confidential medical information when they learned of such abuses from Plaintiff. *Id*. at ¶¶ 47, 48.

In Virginia, in order to sustain a cause of action for intentional infliction of emotional distress, a plaintiff must plead and prove by clear and convincing evidence that (1) the wrongdoers' conduct is intentional and reckless; (2) the conduct is outrageous and intolerable; (3) the alleged wrongful conduct and emotional distress are causally connected; and (4) the distress is severe. *See Russo v. White*, 241 Va. 23, 25 (1991); *Womack v. Eldridge*, 215 Va. 338, 342 (1974). For purposes of consideration of Defendants' demurrer, the Court finds that the allegations of the Amended Motion for Judgment satisfy the first and third elements of this cause of action. However, even at this preliminary stage of the proceedings, the Court finds that the allegations in the Amended

Motion for Judgment are insufficient to satisfy the second and fourth elements of this "disfavored" tort.

In order to meet the standard of outrageous conduct necessary to satisfy the second element, the pleader must set forth allegations describing conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Russo*, 241 Va. at 27. Here, the Plaintiff alleges that Brendel and Lippolt, in an exercise aimed at satisfying their own personal curiosity and an appetite for gossip, themselves discovered and divulged to other co-workers personal and sensitive medical information about the Plaintiff. If true, what was done was certainly insensitive, improper, and unprofessional. It does not, however, rise to the level of the acutely outrageous conduct necessary to support a claim for intentional infliction of emotional distress under Virginia common law.

Nor do the attendant effects of the conduct alleged satisfy the degree of severity necessary to support the fourth element of Plaintiff's claim. Liability arises "only when the emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it." *Russo*, 241 Va. at 27. Plaintiff has alleged severe distress in the form of "severe headaches, loss of appetite, insomnia, nausea, [and] crying fits." *Amended Motion for Judgment*, at ¶ 33. As the Virginia Supreme Court explained in affirming the trial court's sustaining of a demurrer in *Russo*, mental anguish, mental suffering, disappointment, worry, anger, and even nausea, while harbingers of emotional distress, do not rise to the level of severity necessary to support a claim for intentional infliction of emotional distress. *See id.* Moreover, Plaintiff's conclusory allegations of physical injury are no different than those rejected by the Court in *Russo*. Accordingly, the Demurrer to Count VI is sustained, and this count is dismissed.

## G. *Count VII, Computer Invasion of Privacy*

Computer Invasion of Privacy, as proscribed by Virginia Code § 18.2-152.5, has apparently never been addressed by the Virginia courts. While that statute is a criminal statute, Virginia Code § 18.2-152.12 grants civil recourse to a party aggrieved under § 18.2-152.5. Specifically, § 18.2-152.12 provides that "[a]ny person whose property or person is injured by reason of a violation of any provision of this article may sue therefor and recover any damages sustained, and the costs of the suit." Va. Code § 18.2-152.12(A).

The delineation of the elements of this statutory cause of action appears to be a matter of first impression in Virginia. The Court therefore looks to the

relevant portion of Code § 18.2-152.5 in making this determination. That section reads as follows:

> A person is guilty of the crime of computer invasion of privacy when he uses a computer or computer network and intentionally examines without authority any employment, salary, credit or any other financial or personal information relating to any other person. "Examination" under this section requires the offender to review the information relating to any other person after the time at which the offender knows or should know that he is without authority to view the information displayed.

Va. Code § 18.2-152.5(A). This Court therefore holds that the cause of action for Computer Invasion of Privacy consists of the following four elements: (1) the use of a computer or computer network by the offender; (2) with the intent to examine another's records; (3) in an unauthorized context when the offender knew or should have known that he was without authority to examine the records; and (4) the records so examined contain employment, financial, or personal information of the pleader.

Defendants have demurred to this count claiming that the allegations in the Amended Motion for Judgment fail to satisfy elements 1, 3, and 4 of this cause of action. Specifically, Defendants claim that Plaintiff has failed to adequately allege that Defendants used a computer to access any of her personal information. In addition, they contend that assuming, *arguendo*, Defendants did access her medical records, Plaintiff's claim rests on the incorrect assumption that a hospital is without authority to view the records of its patients. They further assert that Plaintiff has not sufficiently alleged that Defendants knew or should have known that they were without authority in undertaking the alleged wrongful examination of Plaintiff's medical records. Finally, they contend that Plaintiff's allegations that the information allegedly examined was personal are insufficient to sustain this cause of action. The Court will address each of these arguments.

### 1. *Use of a Computer or Computer Network*

Contrary to Defendants' assertions, the Amended Motion for Judgment clearly and adequately alleges that Defendants Lippolt and Brendel used the PHAMIS system to access and examine the Plaintiff's personal medical information. *See Amended Motion for Judgment*, at ¶¶ 12, 51. As long as there are sufficient factual allegations to inform a defendant of the nature of the

claim against it, a pleader need not descend into specific factual details in support of that claim. *See CaterCorp v. Catering Concepts, Inc.*, 246 Va. 22, 24 (1993). Plaintiff has sufficiently pleaded Defendants' use of the PHAMIS computer system to obtain her medical information. *See Amended Motion for Judgment*, at ¶ 11.

### 2. *Examination Without Authority*

Defendants next contend that Plaintiff's claim under § 18.2-152.5 rests upon the manifestly incorrect premise that a hospital is without authority to view the records of its patients. Defendants misapprehend both the import of this statutory cause of action and Plaintiff's allegations in support thereof. In analyzing a statute, courts are tasked with imparting a reasonable interpretation to the legislation at issue. *See Pederson v. City of Richmond*, 219 Va. 1061, 1065 (1979). In so doing, a court must presume that the legislature chose with care the words it used and is bound by those words in interpreting the enactment. *See City of Virginia Beach v. ESG Enterprises, Inc.*, 243 Va. 149, 153 (1992) (citations omitted). A plain meaning analysis of this statute reveals that its enactment was not aimed at preventing hospitals or other enterprises from accessing confidential information necessary to effectively conduct business. Rather, the statute is aimed at preventing the *unauthorized* examination of personal information.

The Amended Motion for Judgment amply alleges that Defendants acted without authority in accessing and examining her medical records via the PHAMIS system at a time when review of these records was not reasonably related to the rendering of health care services. *See, Amended Motion for Judgment*, at ¶¶ 6, 11, 51.

### 3. *Offender's Knowledge of Unauthorized Nature of Examination*

A violation of § 18.2-152.5(A) requires the offender to continue to view the information after he knew or should have known that he was "without authority to view the information displayed." Plaintiff has alleged that while she was an in-patient at Alexandria Hospital's psychiatric unit, Lippolt, Brendel, and others currently unknown "conspired to and did learn of her whereabouts and admitting medical condition." *See, Amended Motion for Judgment*, at ¶ 8. Moreover, she alleges that the PHAMIS system was used to access at least some of this information and that the Defendant Hospitals (Alexandria and INOVA-Fairfax) knew or should have known "that abuses in the PHAMIS system could occur and have occurred in the past." *See id.* at

¶¶ 11, 13, 14, 15, 51. In ruling on a demurrer, a court properly views the pleading in the light most favorable to the plaintiff. *See, e.g., W. S. Carnes, Inc. v. Board of Supervisors*, 252 Va. 377, 384 (1996). At this stage of the proceedings, taking all allegations and reasonable inferences therefrom in the light most favorable to the Plaintiff, the Court finds there to be sufficient allegations that Defendants knew or should have known that their examination of Plaintiff's medical records was unauthorized.

### 4. *Nature of Information Viewed*

Finally, Defendants argue that Plaintiff has failed to adequately allege that the nature of the information alleged viewed was personal. Defendants' contention is without merit. In her Amended Motion for Judgment, Plaintiff alleges that Defendants Dorothy Lippolt and Joyce Brendel and others currently unknown learned of "the *whereabouts and admitting medical condition of the Plaintiff*" into Alexandria Hospital. *Amended Motion for Judgment*, at ¶ 8 (emphasis added). Additionally, she alleges that Defendants Dorothy Lippolt and Joyce Brendel secured and published confidential, sensitive, and privileged *medical information* related to Plaintiff. *Amended Motion for Judgment*, at ¶ 16 (emphasis added). Section 18.2-153.5 proscribed unauthorized examination of "salary, credit or any other financial *or personal information* relating to any other person." Va. Code § 18.2-152.5 (emphasis added). At least one scholar has concluded that the information contained in medical history files is clearly within the contemplated scope of the "personal information" protected by § 18.2-152.5. *See*, Robin K. Kutz, "Computer Crime in Virginia: A Critical Examination of the Criminal Offenses in the Virginia Computer Crimes Act," 27 *William and Mary L. Rev.* 783, 826 (1986). This Court agrees and therefore holds that the information allegedly accessed by the Defendants falls squarely within the ambit of § 18.2-152.5. Accordingly, Defendants' Demurrer to Count VII for Computer Invasion of Privacy is overruled.

### *Conclusion*

For the reasons articulated herein, the Demurrer to the Amended Motion for Judgment is sustained as to Counts I, II, III, IV, and VI, and these counts are dismissed. The Court overrules the demurrer to Counts V and VII.