## CIRCUIT COURT OF FAIRFAX COUNTY

Paul H. Blakeman

v.

Emergency USA et al.

August 17, 2011

Case No. CL-2010-6648

By JUDGE DENNIS J. SMITH

This case comes before the Court on Demurrers filed by Defendants Emergency USA ("Emergency"), Quest Diagnostics, Inc. ("Quest"), and Wolfe & Associates, Inc., d/b/a Wolfe Drug Testing ("Wolfe") to Plaintiff Paul Blakeman's Amended Complaint. The matter was briefed and argument was heard, whereupon the Court took the Defendants' Demurrers to Counts I to III ("Negligence"), Count IV ("Third-Party Beneficiary Claim"), and Count VI ("Intentional or Reckless Infliction of Emotional Distress") of the Amended Complaint under advisement.

*Facts as Pleaded and Procedural History*

In March of 2009, Plaintiff was employed at a car dealership ("Employer") that had adopted a Drug Free Work Place program, and Wolfe was the third-party administrator of this program. Wolfe contracted with Emergency to collect the urine specimens. Quest provides laboratory services to test employee urine samples.

On March 12, 2009, the Employer directed Plaintiff to Emergency for a random drug screen. As part of the screen, the Employer provided Plaintiff with a Forensic Drug Testing Custody and Control Form ("CCF"). The CCF is designed to ensure the integrity of the drug testing process. Plaintiff provided Emergency with a specimen. Quest later informed Wolfe that the

sample tested positive for cocaine. Several days later, Plaintiff received a telephone call from the Medical Review Officer at Wolfe, informing him that he had tested positive for cocaine. Plaintiff told his Employer of the call, but his Employer terminated his employment the same day.

Plaintiff filed a Complaint against Defendants on May 7, 2010, seeking monetary damages for Defendants' alleged negligence. On October 29, 2010, this Court sustained Defendants' Demurrers to the Complaint as to the issues of duty and injury and permitted Plaintiff leave to amend.

Plaintiff filed an Amended Complaint on November 19, 2010, alleging negligence, a third-party beneficiary claim, *res ipsa loquitur*, and intentional or reckless infliction of emotional distress. Count I alleges that Emergency negligently collected Plaintiff's urine specimen. Under Count II, Plaintiff alleges that Wolfe had a duty to ensure that Emergency followed the CCF steps and instructions and a duty to verify and reevaluate the accuracy of the test results. Count III alleges that Quest was negligent for failing to confirm that the CCF steps were followed and for failing to invalidate the test result. In Count IV, Plaintiff alleges that he was an intended third-party beneficiary of the agreement between his Employer and Wolfe and that Defendants' failure to follow the CCF instructions and take corrective action constituted breaches of their duties. Count V is a *res ipsa loquitur* claim against all Defendants. In Count VI, Plaintiff alleges that Defendants' intentional or reckless conduct caused him emotional distress.

Defendants have filed Demurrers to all counts of the Amended Complaint.

## Standard of Review

"The purpose of a demurrer is to determine whether a complaint states a cause of action upon which relief may be granted." *Bell v. Saunders*, 278 Va. 49, 53, 677 S.E.2d 39 (2009). "A demurrer admits the truth of the facts contained in the pleading to which it is addressed, as well as any facts that may be reasonably and fairly implied and inferred from those allegations." *Yuzefovsky v. St. John's Wood Apts.*, 261 Va. 97, 102, 540 S.E.2d 134 (2001). To withstand demurrer, a complaint need only contain "sufficient allegations of material facts to inform a defendant of the nature and character of the claim," and need not "descend into statements giving details of proof." *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277 (1993). "A demurrer does not test matters of proof and, unlike a motion for summary judgment, does not involve evaluating and deciding the merits of a claim; it tests only the sufficiency of factual allegations to determine whether the pleading states a cause of action." *Welding, Inc. v. Bland County Serv. Auth.*, 261 Va. 218, 227-28, 541 S.E.2d 909 (2001).

*Analysis of Grounds for Demurrer*

A. *Did Wolfe and Plaintiff's Employer Enter into a Contract for the Benefit of Plaintiff as a Third-Party Beneficiary?*

Defendants argue that the Amended Complaint provides no support for the claim that Plaintiff was an intended beneficiary of the agreement between his Employer and Wolfe. "The essence of a third-party beneficiary's claim is that others have agreed between themselves to bestow a benefit upon the third party but one of the parties to the agreement fails to uphold his portion of the bargain." *Copenhaver v. Rogers*, 238 Va. 361, 367, 384 S.E.2d 593 (1989). For a third-party beneficiary claim to succeed, "the third party must show that the contracting parties clearly and definitely intended that the contract confer a benefit upon him." *Collins v. First Union Nat'l Bank*, 272 Va. 744, 751, 636 S.E.2d 442 (2006). "[A] person who benefits only incidentally from a contract between others cannot sue thereon." *Copenhaver*, 238 Va. at 367.

It is conceded that there was a written contract between the Employer and Wolfe. "[A] court considering a demurrer may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are a part of the pleadings." *Ward's Equip. v. New Holland N. Am.*, 254 Va. 379, 382, 493 S.E.2d 516 (1997). Even though the Amended Complaint's third-party beneficiary claim refers to all Defendants, Plaintiff only alleges an agreement between Wolfe and the Employer:

> By agreement with Plaintiff's employer, Defendant [Wolfe] was the Third-party Administrator and Medical Review Officer for the Drug Free Workplace Program (DFWP). The intended third-party beneficiaries of the agreement between Plaintiffs employer and Wolfe were the employees of the Plaintiffs employer. As an employee, Plaintiff was an intended beneficiary of this agreement.

(Am. Compl. ¶ 53.) According to Section 15 of the Occupational Testing Services Agreement ("Agreement") between Wolfe and the Employer, the Agreement "is intended to inure only to the benefit of administrator [Wolfe] and principal [Plaintiffs Employer]." (Pl.'s Resp. to Mot. Craving Oyer, Ex. A.) "This Agreement is not intended to create, nor shall be deemed or construed to create, any rights in any third parties." (*Id.*) These unambiguous phrases leave no doubt that Wolfe and the Employer did not contract for the benefit of Plaintiff during the term of the written contract. Although Plaintiff did not attach a copy of this Agreement to the Amended Complaint, on February 24, 2011, the Honorable Brett A. Kassabian granted a Motion

Craving Oyer as to the Agreement identified by the Plaintiff and made it a part of the Amended Complaint.

It is unclear, however, whether this written Agreement was in effect in March 2009, as by its terms the contract expired on February 1, 2006, about three years prior to the date of Plaintiff's testing. I note that Plaintiff does not make any factual allegation that the original contract was amended in any way. Plaintiff only makes one factual assertion in the Amended Complaint that could possibly support the third-party beneficiary claim: "Wolfe facilitated all testing arrangements with the collection sites, (*to make them convenient for the employer's employees*). . . ." (Am. Compl. ¶ 53 (emphasis added).) Even assuming the truth of this allegation, standing alone this is insufficient to establish that Wolfe and the Employer "clearly and definitely" intended their agreement to confer any benefit upon Plaintiff. *Collins*, 272 Va. at 751.

In review of the procedural history, Paragraph 53 of the Plaintiffs Amended Complaint asserts the existence of an "agreement" between the Employer and Wolfe intending to benefit Plaintiff. Wolfe filed a Motion Craving Oyer, and on February 24, 2011, this Court entered and Order granting Wolfe's Motion Craving Oyer of the contract. The Order specifically directed Plaintiff to:

> file with this Court, no later than February 7, 2011, a copy of the contract between Wolfe and the Plaintiff's employer referred to in Paragraph 53 of the Amended Complaint, and any additional contractual documents related to Count IV of the Plaintiffs Amended Complaint, and that these documents be made part of the Plaintiff's Amended Complaint.

(Feb. 24, 2011, Order 1.) On February 4, 2011, Plaintiff filed "Plaintiff's Response to Motion Craving Oyer" stating that the contract attached was the contract "referred to in Paragraph 53 of the Amended Complaint." (Pl.'s Resp. to Mot. Craving Oyer 1.) Plaintiff also referred to "[a]dditional contractual documents" and attached those as well. (*Id.*)

Assuming that the written agreement expired, the allegations of the Amended Complaint are that Wolfe continued to provide the same services to the Employer. There is no factual allegation that the terms of this continued relationship differed from those set forth in the written agreement the parties had operated under for the preceding two years. There is nothing in the "[a]dditional contractual documents" referring to third-party beneficiaries. (*Id.*) I therefore rule that the factual allegations in the Amended Complaint and the documents produced in response to the Order craving oyer, even when coupled with the conclusory allegations in the Amended Complaint, do not amount to facts from which a rational fact finder could find a clear

and definite statement by the parties of an intent to confer a benefit upon Plaintiff. Accordingly the Demurrer to Count IV is sustained.

## B. *Did Defendants Owe a Legal Duty to Plaintiff?*

Although the issue of negligence on the part of third parties in an employer's drug testing program is novel, the underlying principles are familiar:

> "The essential elements of a cause of action . . . based on a tortious act . . . are (1) a legal obligation of a defendant to the plaintiff, (2) a violation or breach of that duty or right, and (3) harm or damage to the plaintiff as a proximate consequence of the violation or breach. . . . A cause of action does not evolve unless all of these factors are present."

*Austin v. Consolidation Coal Co.*, 256 Va. 78, 82, 501 S.E.2d 161 (1998) (quoting *Stone v. Ethan Allen, Inc.*, 232 Va. 365, 368-69, 350 S.E.2d 629 (1986)). Concerning the second element, "[t]o establish a cause of action for negligence, the duty alleged to have been tortiously breached must be a common law duty, not a duty arising between the parties solely by virtue of a contract." *Holles v. Sunrise Terrace, Inc.*, 257 Va. 131, 136, 509 S.E.2d 494 (1999). Losses resulting from the breach of a duty assumed only by an agreement "remain the sole province of the law of contracts." *Filak v. George*, 267 Va. 612, 618, 594 S.E.2d 610 (2004). Here, the Amended Complaint must allege the breach of a common law duty because Plaintiff was not a party to or a third-party beneficiary of any contract with Defendants.

The inquiry of whether a legal duty exists is a question of law. *Kellermann v. McDonough*, 278 Va. 478, 487, 684 S.E.2d 786 (2009). "[I]t is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." *Id.* at 489 (quoting *Nolde Bros. v. Wray*, 221 Va. 25, 28, 266 S.E.2d 882 (1980)). The Supreme Court of Virginia has stated that § 323 of the *Restatement (Second) of Torts* embodies this common law principle of assumption of a duty:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if:
>
> > (a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

*Didato v. Strehler*, 262 Va. 617, 629, 554 S.E.2d 42 (2001) (quoting *Restatement (Second) of Torts* § 323); *Kellermann*, 278 Va. at 489. When determining whether there was an assumption of a duty in the physician-patient context, the Supreme Court required that the physician "personally engage [] in some affirmative act amounting to a render[ing of] services to another." *Fruiterman v. Granata*, 276 Va. 629, 646, 668 S.E.2d 127 (2008) (quoting *Jenkins v. Best*, 250 S.W.3d 680, 693 (Ky. App. 2007)). The Supreme Court has also applied this general principle in other contexts, *e.g.*, *Kellermann*, 278 Va. at 489-90 (finding that the plaintiff pleaded a cognizable tort action because the defendant "undertook a duty to render services" to the plaintiff's fourteen-year-old daughter, including agreeing not to let her ride in cars with inexperienced or young male drivers); *see also Naccash v. Burger*, 223 Va. 406, 414, 290 S.E.2d 825 (1982) (finding that a laboratory owed a duty of reasonable care to the plaintiffs in the handling of blood withdrawn for Tay-Sachs testing on grounds different from § 323).

## 1. *Emergency Assumed a Duty to Plaintiff*

Assuming all facts and inferences for Plaintiff, Emergency engaged in an affirmative act amounting to the rendering of services to Plaintiff. Specifically, Emergency collected Plaintiff's urine specimen for the purpose of screening him for drugs in accordance with his Employer's Drug Free Work Place program. Assuming the truth of the facts alleged and reasonable inferences therefrom, a reasonable finder of fact could conclude that Emergency should have recognized that the proper performance of the service was necessary for the protection of Plaintiff's "person or things." *Didato*, 262 Va. at 629. Implicit in drug testing is the consequence of "harm" to an employee's job status. Plaintiff at all times complied with Emergency's instructions. In so doing, he relied on Emergency to exercise reasonable care while collecting and transmitting his specimen.

Plaintiff has alleged a host of collection problems that violated CCF protocol designed to ensure the integrity of a person's specimen. These allegations create a genuine issue of fact as to whether Emergency breached the duty of reasonable care, increasing the risk of harm to Plaintiff. Plaintiff has alleged that the breach resulted in a false positive for a cocaine metabolite that naturally led to his termination. Emergency may be liable for Plaintiff's damages because of his reliance upon Emergency's undertaking. Applying the above standards to Emergency, the Demurrers are overruled as to the argument that the Amended Complaint fails to allege any duties owed to Plaintiff in support of Count I of the Amended Complaint, "Negligence of Emergency USA."

## 2. *Wolfe and Quest Did Not Owe Any Legal Duties to Plaintiff*

Unlike Emergency, Wolfe and Quest did not owe any legal duties to Plaintiff. The Supreme Court has consistently held that "generally a person does not have a duty to protect another from the conduct of third persons." *Kellermann*, 278 Va. at 492 (quoting *Didato*, 262 Va. at 629). There is, however, an exception to this rule:

> However, this general rule does not apply when a special relationship exists between a defendant and a plaintiff that gives rise to a right to protection to the plaintiff or between the defendant and third persons that imposes a duty upon the defendant to control the conduct of the third person causing reasonably foreseeable danger to the plaintiff. . . .
>
> Examples of special relationships that we have recognized between a defendant and a plaintiff include common carrier-passenger, business proprietor-invitee, innkeeper-guest, and employer-employee with regard to the employer's potential duty of protecting or warning an employee.

*Id.* This list of special relationships is not exclusive. *Holles*, 257 Va. at 136. "An essential characteristic of a special relationship is that it provides a right of protection to a plaintiff by a defendant from the criminal acts of third persons that can be reasonably foreseen or anticipated." *Id.*

Wolfe does not fit within either § 323's assumption of duty principle or the special relationship exception. Under § 323's assumption of duty principle, Wolfe did not engage in any affirmative acts amounting to the rendering of services to Plaintiff. Wolfe rendered services only to the Employer, and those duties arose purely out of its contract with the Employer. Wolfe simply directed Plaintiff to Emergency for the test, informed Plaintiff of the test results, provided him with the option of having his "B" sample tested, and directed him to obtain a statement from Emergency's representative after discovering that there was no "B" sample. Moreover, there was no special relationship between Plaintiff and Wolfe; Wolfe did not owe a right of protection to Plaintiff from the criminal or negligent acts of third persons.

Nor does Quest fit squarely within Virginia's assumption of duty jurisprudence. Quest did not assume a duty pursuant to § 323 because Plaintiff does not even allege that Quest took any affirmative acts. He simply alleges that he notified Quest of Emergency's failure to follow the CCF steps and instructions and that it "chose not to investigate or invalidate the test." (Am. Compl. ¶¶ 26, 50.) Like Wolfe, Quest did not have a special relationship with Plaintiff because their relationship did not provide any sort of right of protection from the criminal acts of others.

Taking all factual assertions and inferences for Plaintiff, neither Wolfe nor Quest assumed any sort of duty to Plaintiff. Both Defendants fit into the more general rule that "a person does not have a duty to protect another from the conduct of third persons." *Kellermann*, 278 Va. at 492 (citation omitted). Applying the above standards to Wolfe and Quest, the Demurrers are sustained concerning the argument that the Amended Complaint fails to allege any duties owed to Plaintiff in support of Counts II and III of the Amended Complaint ("Negligence of Wolfe and Associates, Inc., d/b/a Wolfe Drug Testing," and "Negligence of Quest Diagnostics").

*C. Can Erectile Dysfunction Satisfy Virginia's Rule That Plaintiff's Physical Injury Was the Natural Result of the Emotional Disturbance Caused by Negligence?*

Defendants also contend that Plaintiff's negligence claim fails as a matter of law because he fails to allege a physical injury as required to recover negligently inflicted emotional distress damages. An individual cannot recover for emotional distress "where conduct is merely negligent, not willful, wanton, or vindictive, and physical impact is lacking. . . ." *Hughes v. Moore*, 214 Va. 27, 34, 197 S.E.2d 214 (1973). However, recovery for emotional distress is permitted provided that it is connected with a physical injury:

> [W]here the claim is for emotional disturbance and physical injury resulting therefrom, there may be recovery for negligent conduct, notwithstanding the lack of physical impact, provided the injured party properly pleads and proves by clear and convincing evidence that *his physical injury was the natural result of fright or shock proximately caused by the defendant's negligence.* In other words, there may be recovery in such a case if, but only if, there is shown a clear and unbroken chain of causal connection between the negligent act, the emotional disturbance, and the physical injury.

*Id.* (emphasis added). In *Hughes*, the Supreme Court of Virginia concluded that the plaintiff's inability to feed her baby due to a lack of milk, the onset of her menstrual period while she was nursing, and diminishing breasts, all resulting from her nervousness after witnessing a car crash into her home, constituted physical injuries naturally resulting from fright and shock. *Id.* at 28-29, 35.

In another case, the Court determined that the plaintiff's physical injuries were not compensable injuries under the rule of *Hughes*. In *Myseros v. Sissler*, 239 Va. 8, 387 S.E.2d 463 (1990), the defendant's car struck the plaintiff's tank truck on the Capital Beltway, after which the plaintiff had to

run onto the median strip several times to avoid being struck by oncoming cars. *Id.* at 10. His post-traumatic stress and anxiety disorders after the accident were "accompanied by sweating, dizziness, nausea, difficulty in sleeping and breathing . . . loss of appetite and weight, [and heart issues.]" *Id.* at 11. The plaintiff had only proved " `typical symptoms of an emotional disturbance,' for which there can be no recovery under *Hughes v. Moore* in the absence of resulting physical injury." *Id.* at 12. "What *Hughes v. Moore* requires, however, and what this case lacks, is clear and convincing evidence of `symptoms' or `manifestations' of physical injury, not merely of an underlying emotional disturbance." *Id.*

The present case is distinguishable from *Hughes* and similar to *Myseros*. Plaintiff's allegations suggest that he suffered from one potential physical injury, erectile dysfunction: "[H]e cannot function as a man. He has been emotionally emasculated and he experiences a devastating physical manifestation of a severe emotional trauma." (Am. Compl. ¶ 65.) Unlike *Hughes*, the Amended Complaint does not allege that Plaintiff suffered from immediate fright or shock as a result of Defendants' actions. Instead, Plaintiff alleges that he suffered from humiliation, embarrassment, depression, insomnia, irritability, and anger after receiving the test results. Additionally, like the plaintiff in *Myseros*, Plaintiff's allegations are more consistent with symptoms or manifestations of an emotional disturbance, not those of a physical injury. As a result, Defendants' Demurrers concerning Plaintiff's failure to allege a physical injury in support of Counts I to III ("Negligence") of the Amended Complaint are sustained.

### D. *Does the Economic Loss Rule Bar Plaintiff's Negligence Claim?*

As a result of Plaintiff's failure to allege a physical injury, Defendants argue, the economic loss rule bars his negligence claim. "Recovery in tort is available only when there is a breach of a duty `to take care for the *safety* of the person or property of another'." *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 236 Va. 419, 425, 374 S.E.2d 55 (1988) (quoting *Blake Constr. Co. v. Alley*, 233 Va. 31, 34, 353 S.E.2d 724 (1987)). Only the law of contracts provides a remedy for economic losses. *Id.* at 424. As explained above, Plaintiff's Amended Complaint fails to sufficiently allege injuries other than economic losses. As a result, the economic loss rule bars Plaintiff's negligence claims (Counts I to III of the Amended Complaint), and the Demurrers are sustained as to this argument.

### E. *Does the Amended Complaint Sufficiently Allege That Defendants Intentionally or Recklessly Inflicted Emotional Distress upon Plaintiff?*

Plaintiff claims that Defendants' actions rise to the level of intentional or reckless infliction of emotional distress. Intentional infliction of emotional distress must meet a four-part, conjunctive test:

> [E]motional distress resulting from a non-tactile tort may be compensated if the plaintiff alleges, and proves by clear and convincing evidence, that: [1] the wrongdoer's conduct is intentional or reckless; [2] the conduct is outrageous and intolerable; [3] the alleged wrongful conduct and emotional distress are causally connected; and, [4] the distress is severe.

*Russo v. White*, 241 Va. 23, 26, 400 S.E.2d 160 (1991). The Court is "not bound to accept conclusory allegations in a review of a demurrer to an intentional infliction of emotional distress claim." *Ogunde v. Prison Health Servs.*, 274 Va. 55, 66, 645 S.E.2d 520 (2007). Defendants contend that the Amended Complaint fails to adequately allege the second and fourth elements.

Plaintiff's allegations fail to meet the fourth prong of the test, severe distress. The Virginia Supreme Court has defined the term "emotional distress" as follows:

> The term "emotional distress" travels under many labels, such as, "mental suffering, mental anguish, mental or nervous shock. . . . It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea.". . . But liability arises only when the emotional distress is extreme and only where the distress inflicted is so severe that no reasonable person could be expected to endure it.

*Russo*, 241 Va. at 27 (quoting *Restatement (Second) of Torts* § 46, cmt. j (1965)). For example, in *Russo* the Supreme Court found that a plaintiff's allegations that she was "nervous, could not sleep, experienced stress and `its physical symptoms,' withdrew from activities, and was unable to concentrate at work" did not fit within this definition. *Id.* at 28. "There is no claim, for example, that she had any objective physical injury caused by the stress, that she sought medical attention, that she was confined at home or in a hospital, or that she lost income." *Id. See also Almy v. Grisham*, 273 Va. 68, 80, 639 S.E.2d 182 (2007) (finding the plaintiff's factual allegations, including that she had to seek professional counseling due to her depression resulting from the defendants' actions, sufficient to survive a demurrer).

Like the complaint in *Russo*, the Amended Complaint in the instant case does not allege any objective physical injury caused by the stress. Nor does Plaintiff allege that he required medical attention like the plaintiff in *Almy*. Plaintiff's alleged distress is thus not "so severe that no reasonable person could be expected to endure it." *Russo*, 241 Va. at 27 (citation omitted).

Plaintiffs' allegations also do not meet the second prong of the test, that "the conduct was outrageous and intolerable in that it offends against

the generally accepted standards of decency and morality." *Womack v. Eldridge*, 215 Va. 338, 342, 210 S.E.2d 145 (1974). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Russo*, 241 Va. at 27 (quoting *Restatement (Second) of Torts* § 46, cmt. d (1965)). Plaintiff has alleged that Emergency failed to adhere to the in-house collection procedure and that all Defendants refused to invalidate the drug test. Such conduct does not rise to the level of that which is "utterly intolerable in a civilized community." *Id.* (citation omitted).

The Demurrers are sustained concerning the arguments related to Count VI ("Intentional or Reckless Infliction of Emotional Distress") of the Amended Complaint.

## Conclusion

Defendants' Demurrers to the Amended Complaint are sustained in part and overruled in part.

## Order

This matter came to be heard on February 25, 2011, concerning the Defendants' Demurrers to the Plaintiff's Amended Complaint, it appearing to the Court that the Amended Complaint adequately alleges that Defendant Emergency USA assumed a duty to the Plaintiff, it further appearing to the Court that the Amended Complaint fails to sufficiently allege that the Defendants Quest Diagnostics, Inc., and Wolfe & Associates, Inc., d/b/a Wolfe Drug Testing, owed any duties to the Plaintiff; that the Plaintiff suffered physical injuries or severe emotional distress; that the Plaintiff was a third-party beneficiary of a contract; and that the Defendants' conduct was outrageous; it further appearing to the Court that *res ipsa loquitur* is not a cause of action; it is therefore ordered that the Defendants' Demurrers to the Plaintiff's Amended Complaint are overruled as to the argument that the Amended Complaint fails to allege any duties owed by Defendant Emergency USA; it is further ordered that the Defendants' Demurrers to the Plaintiff's Amended Complaint are otherwise sustained as to Counts I to VI of the Amended Complaint; it is further ordered that the Court's Letter Opinion of August 17, 2011, is incorporated into this Order.