## Richmond

ToY E. Hughes v. Sue Etta Moore.

June 11, 1973.

Record No. 8100.

Present, All the Justices.

*Charles B. Flannagan, II; Francis W. Flannagan* (*Woodward, Miles & Flannagan,* on brief), for plaintiff in error.

*Glen M. Williams,* for defendant in error.

I'Anson, J., delivered the opinion of the court.

Plaintiff, Sue Etta Moore, brought this action to recover for personal injuries sustained as a consequence of fright and shock caused when an automobile driven by the defendant, Toy E. Hughes, crashed into the front porch of her home. A jury trial resulted in a verdict for the plaintiff for the sum of $12,000. Judgment was entered on the verdict, and defendant is here on a writ of error.

Defendant contends (1) that there can be no recovery for personal injuries negligently caused in the absence of contemporaneous physical contact with the person; (2) that testimony of the odor of alcohol on defendant's breath was improperly admitted in evidence; (3) that the court should have sustained his motions for a mistrial because of certain improper and prejudicial testimony given by witnesses in the presence of the jury; (4) that the evidence was insufficient to support the jury's verdict; and (5) that the verdict was excessive.

The evidence shows that about 11:30 p.m., on May 2, 1970, while defendant was operating his automobile along a highway near St. Charles, in Lee County, Virginia, he ran the car off the road, struck an automobile parked in the driveway of plaintiff's home, and crashed into the house which was set back approximately 35 feet from the highway.

The State trooper who investigated the accident found pressure or skid marks made by defendant's car extending a distance of approximately 285 feet on and off the paved portion of the highway and across plaintiff's property to the point of impact with her house.

Plaintiff was standing in a doorway of her house between the kitchen and living room, looking through a picture window, when she heard a noise and saw the headlights of defendant's car shining into her living room. The car crashed into the front porch of the house, and after the initial collision the car moved back and forth against the porch several times. Plaintiff said that she "froze in her tracks" and screamed. Immediately thereafter she became weak and felt as if her legs were going to fold under her. She became very nervous, could not sleep that night, and had pains in her chest and arms as the result of the collision. Although she received no physical injury from without, she could not breast-feed her three-month-old baby for lack of milk, and her menstrual period started.

Plaintiff consulted Dr. Daniel P. Gabriel, her family physician, on May 4, 1970. Dr. Gabriel testified that plaintiff was highly nervous. She was unable to breast-feed her baby and the child was put on a bottle. Her menstrual period had begun, which is not normal

for a mother during the period of nursing her child, and the flow was excessive. He prescribed hormones for her "diminishing breasts." He treated plaintiff for several weeks but her nervousness worsened, and he referred her to Dr. Pearce Nelson, a psychiatrist.

Dr. Nelson diagnosed plaintiff's condition as "anxiety reaction, with phobia and hysteria." He testified that she was experiencing physical pain in her body from the emotional disturbance and that her condition presented a serious mental problem. The pain was real, and "not imaginary." After treating plaintiff over a period of several months, he said her prognosis was good but that if anything happened to upset her emotionally she would return to her previous physical and nervous condition. He was definitely of the opinion that there was a "causal connection" between the automobile striking plaintiff's home and her emotional and physical condition.

Plaintiff testified at the trial, nearly two years after the accident, that her condition had improved but she was still very nervous. She was continuing to take medication prescribed by Dr. Nelson. Her menstrual periods were still irregular and her bust was smaller than its normal size. Before the automobile struck her home she was in good physical and mental condition.

Defendant testified that his speed was 25 miles an hour. He said a woman ran across the road in front of him, causing him to swerve his car and lose control of it. He denied that he left the skid marks testified to by the state trooper. His brother, who was a passenger in the car, corroborated defendant's testimony.

Defendant, by counsel, says that under Virginia law there can be no recovery for negligently caused mental or emotional disturbances in cases not involving a willful, wanton or vindictive wrong, unless there has been a contemporaneous physical injury to the person. Thus he argues that since this action is based on negligence and there was no physical impact upon the plaintiff, and no willful, wanton or vindictive wrong was committed, the plaintiff cannot recover in this case. In support of his position he relies on *Bowles* v. *May*, 159 Va. 419, 433, 166 S.E. 550, 555 (1932); *Moore* v. *Jefferson Hospital, Inc.*, 208 Va. 438, 158 S.E.2d 124 (1967); *Soldinger* v. *United States*, 247 F.Supp. 559 (E.D.Va. 1965); *Ferrell* v. *Chesapeake & Ohio Ry. Emp. Hosp. Ass'n*, 336 F.Supp. 833 (W.D.Va. 1971).

In *Bowles* the plaintiff claimed that defendant's threatening remarks and gestures caused her to become extremely nervous and emotionally upset. She subsequently suffered a stroke of paralysis which

she claimed was causally related to the defendant's threats. In the course of the opinion this court said:

"... [I]n Virginia ... there can be no recovery for mental anguish and suffering resulting from negligence unaccompanied by contemporaneous physical injuries to the person." 159 Va. at 433, 166 S.E. at 555.

. . . .

"It is now a well accepted fact that terror or a severe mental shock may be the direct and proximate cause of wreck to the nervous system, the consequence of which may be a visible physical injury. When such fright is due to a willful, wanton and vindictive wrong, recovery is generally permitted, notwithstanding the fact that there is no contemporaneous injury from without . . . ." 159 Va. at 437, 166 S.E. at 556.

The opinion further stated:

"This case, which is the first of the kind to reach this court, falls within a class which is not favored. While the possible success of unrighteous or groundless actions should not bar recovery in a meritorious case, nevertheless, because of the fact that fright or mental shock may be so easily feigned without detection, the court should allow no recovery in a doubtful case. The plaintiff should be required to prove by clear and convincing evidence, (1) the commission of the wrongful act, and (2) a chain of unbroken causal connection between the alleged act and the physical injury." 159 Va. at 438, 166 S.E. at 557.

In reversing a judgment for the plaintiff, this court stated that each case is governed by its own particular facts, and held that the evidence did not support a finding that there was a causal connection between the alleged insulting words and the stroke.

We held in *Moore, supra,* that an allegation in a motion for judgment charging willful, wanton and vindictive acts causing terror or mental shock which proximately caused injury to the plaintiff sufficiently alleged an intentional tort, notwithstanding the fact that there was no physical contact, and that the trial court erred in sustaining a demurrer to the motion for judgment. 208 Va. at 441, 158 S.E.2d at 127.

*Soldinger* and *Ferrell* construed *Bowles* to mean that there can be no recovery for mental anguish and suffering resulting from negli-

gence unaccompanied by contemporaneous physical injuries to the person absent a willful, wanton and vindictive wrong.

On the other hand, in *Penick* v. *Mirro*, 189 F.Supp. 947 (E.D.Va. 1960), *Bowles* was construed to mean that it is not necessary to the creation of a right to reimbursement for negligently caused mental or emotional disturbance, even when the act is not willful or wanton, that there be actual impact of the tortfeasant instrument upon the plaintiff's body. The court said that the important question was whether the "damage" was of substance and sufficiently identifiable in the person of the claimant. It further observed that recovery in *Bowles* was denied solely on the basis of the insufficiency of the evidence to establish any wrongdoing on the part of the defendant.

Admittedly *Bowles* is not clear, and it is subject to conflicting constructions. But from a consideration of all that was said in *Bowles* it may be construed to mean that there can be recovery for a negligently caused mental or emotional disturbance and its physical consequences to the person, unaccompanied by contemporaneous physical injury, absent a willful, wanton or vindictive wrong, provided it is alleged and proved by clear and convincing evidence that a wrongful act was committed and that there was an unbroken causal connection between the alleged act and the physical injury.

Since *Bowles* there have been significant trends and developments in the law relating to the "impact rule" which were not referred to in the briefs of the parties. Thus in order to clarify the rule in Virginia, we deem it important to consider the origin of the rule, the reasons therefor, and its present status in other jurisdictions dealing with the issue.[1]

The landmark decision of *Victorian Railways Commissioners* v. *Coultas*, 13 App.Cas. 222 (Eng. 1888), has been cited as the leading case for the proposition that there can be no recovery for the physical results of mental anguish without impact.[2] There recovery for damage to plaintiff's nervous system caused by defendant's oncoming train was denied upon the ground that:

---

1. See Annot., "Right to recover for emotional disturbance or its physical consequences, in the absence of impact or other actionable wrong." 64 A.L.R.2d 100 (1959).

2. The rule was abandoned 13 years later in *Dulieu* v. *White & Sons*, (1901) 2 K.B. 669, 681. But see also *Daley* v. *LaCroix*, 384 Mich. 4, fn. 6 at 10, 179 N.W.2d 390, fn. 6 at 393 (1970), where it is said that the dubious distinction accorded *Victorian Railways Commissioners* v. *Coultas* as to the requirement of impact is open to question, especially in view of certain statements in that opinion. For the nemesis which *Victorian Railways Commissioners* has proven to be, see Prosser, Torts (3rd Ed.), p. 350, fn. 81.

"Damages arising from mere sudden terror unaccompanied by any actual physical injury, but occasioning a nervous or mental shock, cannot under such circumstances, their Lordships think, be considered a consequence which, in the ordinary course of things, would flow from the negligence of the gate-keeper. If it were held that they can, it appears to their Lordships that it would be extending the liability for negligence much beyond what that liability has hitherto been held to be. Not only in such a case as the present, but in every case where an accident caused by negligence had given a person a serious nervous shock, there might be a claim for damages on account of mental injury. The difficulty which now often exists in case of alleged physical injuries of determining whether they were caused by the negligent act would be greatly increased, and a wide field opened for imaginary claims." 13 App. Cas. at 225-26.

Divergent views crystallized in this country before the rule was abandoned in England in *Dulieu* v. *White & Sons, supra,* fn. 2.[3]

*Mitchell* v. *Rochester Ry. Co.,* 151 N.Y. 107, 45 N.E. 354 (1896), became the leading American authority adopting the "impact rule." There the New York Court of Appeals said:

"Assuming that fright cannot form the basis of an action, it is obvious that no recovery can be had for injuries resulting therefrom. That the result may be nervous disease, blindness, insanity, or even a miscarriage, in no way changes the principle. These results merely show the degree of fright, or the extent of the damages.

. . . .

"Therefore the logical result of the respondent's concession would seem to be, not only that no recovery can be had for mere fright, but also that none can be had for injuries which are the direct consequences of it. . . . These considerations lead to the conclusion that no recovery can be had for injuries sustained by fright occasioned by the negligence of another, where there is no immediate personal injury." 151 N.Y. at 109-10, 45 N.E. at 354-55.

Significantly, the New York Court of Appeals, in *Battalla* v. *State,* 10 N.Y.2d 237, 219 N.Y.Supp.2d 34, 176 N.E.2d 729 (1961), expressly overruled its *Mitchell* decision, saying that:

3. See Smith, "Relation of Emotions to Injury and Disease: Legal Liability for Psychic Stimuli," 30 Va. L. Rev. 193 (1944).

"Before passing to a résumé of the evolution of the doctrine in this State, it is well to note that it has been thoroughly repudiated by the English courts which initiated it, rejected by a majority of American jurisdictions, abandoned by many which originally adopted it, and diluted, through numerous exceptions, in the minority which retained it. Moreover, it is the opinion of scholars that *the right* to bring an action should be enforced." 10 N.Y.2d at 239, 219 N.Y.Supp.2d at 36, 176 N.E.2d at 730.

An analysis of the early cases holding that there can be no recovery for mental or emotional disturbance and consequent physical injuries resulting from negligence unaccompanied by contemporaneous physical injuries to the person indicates that there were three basic arguments supporting the rule: (1) medical science's difficulty in proving causation between the claimed damages and the alleged fright; (2) the fear of fraudulent or exaggerated claims; and (3) concern that the absence of such a rule would precipitate a flood of litigation. See *Bosley* v. *Andrews*, 393 Pa. 161, 168-69, 142 A.2d 263, 266-67 (1958); Prosser, Torts (3d Ed.), *supra*, § 55, p. 346; Throckmorton, "Damages for Fright," 34 Harv.L.Rev. 260, 273-74 (1921).

A rapidly increasing majority of courts have repudiated or not followed the "impact rule" for the reasons that the early difficulty in tracing a resulting injury back through fright had been minimized by the advance of medical science; that the possibility of fraud should not prevent those with legitimate claims from proving their cases; and that courts should not shirk their duty merely because of the possibility of an increase in litigation, which has not proved to be a fact. See *Robb* v. *Pennsylvania Railroad Company*, 58 Del. 454, 210 A.2d 709 (1965); *Falzone* v. *Busch*, 45 N.J. 559, 214 A.2d 12 (1965); *Trent* v. *Barrows*, 55 Tenn. App. 182, 397 S.W.2d 409, 411 (1965); *Savard* v. *Cody Chevrolet, Inc.*, 126 Vt. 405, 234 A.2d 656 (1967); *Okrina* v. *Midwestern Corp.*, 282 Minn. 400, 165 N.W.2d 259 (1969); *Niederman* v. *Brodsky*, 436 Pa. 401, 261 A.2d 84 (1970); *Daley* v. *LaCroix*, *supra*; *Rodrigues* v. *State*, 52 Haw. 156, 169-74, 472 P.2d 509, 518-20 (1970).

Many eminent scholars have considered the rule and are virtually unanimous in condemning it as unjust and contrary to experience and logic.[4]

---

4. See Prosser, Torts (3rd Ed. 1964), *supra*, § 55, at 349-52; 2 Harper & James, The Law of Torts, § 18.4, at 1031-39 (1956); Smith, "Relation of Emotions to Injury and Disease: Legal Liability for Psychic Stimuli," *supra*; McNiece, "Psychic Injury and

Our research reveals that a total of 35 jurisdictions have considered the rule. Of these at least 25 have either completely rejected it or abandoned it as being unsound. Since 1929 every jurisdiction which has considered the issue, except the Supreme Court of Washington in the case of *Schurk* v. *Christensen,* 80 Wash.2d 652, 497 P.2d 937 (1972),[5] has either abandoned the rule or refused to adopt it. See *Niederman* v. *Brodsky, supra,* 436 Pa. at 403, fn. 1, 261 A.2d at 85, fn.1, and those cases decided after *Niederman,* cited above. See also comment, "Injuries from Fright Without Contact," 15 Clev.-Mar.L.Rev. 331, 337 (1966).

Based on a close scrutiny of *Bowles,* and believing the reasons for the existence of the impact rule are not logical, we today clarify our rule. We adhere to the view that where conduct is merely negligent, not willful, wanton, or vindictive, and physical impact is lacking, there can be no recovery for emotional disturbance alone. We hold, however, that where the claim is for emotional disturbance *and* physical injury resulting therefrom, there may be recovery for negligent conduct, notwithstanding the lack of physical impact, provided the injured party properly pleads and proves by clear and convincing evidence that his physical injury was the natural result of fright or shock proximately caused by the defendant's negligence. In other words, there may be recovery in such a case if, but only if, there is shown a clear and unbroken chain of causal connection between the negligent act, the emotional disturbance, and the physical injury.

The rule, of course, is subject to familiar limitations.

A defendant's standard of conduct is generally measured by the reaction to be expected of a normal person. Absent specific knowledge by a defendant of a plaintiff's unusual sensitivity, there should be no recovery for mental or emotional disturbance and consequent physical injury to a hypersensitive person where a normal individual would not be affected under the circumstances. See Prosser, *supra,* § 55, at 352; 2 Harper & James, *supra,* § 18.4, at 1035; Restatement of Torts (Second), § 313, comment *c* at 114.

Under the rule adopted today we are not saying that a plaintiff, in an action for negligence, may recover damages for physical injuries resulting from fright or shock caused by witnessing injury to another, allegedly occasioned by the negligence of a defendant toward

Tort Liability in New York," 24 St.Johns L.Rev. 1, 31 (1949); Green, "Fright Cases," 27 Ill.L.Rev. 761 (1933); Throckmorton, "Damages for Fright," *supra.*

5. The majority stated *Schurk* was not a proper case to reconsider the "impact rule" but it was not deciding that it would not reconsider the rule in a proper case.

a third person, or caused by seeing the resulting injury to a third person after it has been inflicted through defendant's negligence. See *Jelley* v. *LaFlame*, 108 N.H. 471, 238 A.2d 728 (1968); *Waube* v. *Warrington*, 216 Wis. 603, 612-13, 258 N.W. 497 (1935); *Schurk* v. *Christensen*, *supra*; Annot., 29 A.L.R.3d 1337 (1970). Cf. *Dillon* v. *Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316 (1968).

In the case at bar, there was evidence that plaintiff suffered physical injuries which were the natural result of the fright and shock proximately caused by defendant's tortious conduct. Thus we hold that plaintiff had the right to maintain this action against defendant.

After defendant, by counsel, properly saved his exception to the ruling of the trial court that plaintiff could maintain this action, the jury was instructed, without objection, that plaintiff was required to prove her case by a preponderance of the evidence. Counsel did not contend in the court below, or before us, that plaintiff was required to prove her case by clear and convincing evidence as stated in *Bowles*, *supra*. Since the burden of proof issue was not raised, it will not be considered by us as a ground for reversal. Rule 5:7.

Defendant's contention that the court erred in admitting evidence of the odor of alcohol on his breath is without merit. Defendant admitted that he had been drinking in the late afternoon of May 2, 1970. There was testimony that his eyes were glassy, when he got out of his automobile he staggered, and as he walked around the car he held on to it.

The evidence was admissible on the issue of defendant's negligence in the operation of his automobile. *Jackson* v. *Prestage*, 204 Va. 481, 483-84, 132 S.E.2d 501, 504 (1963).

We do not agree with defendant's contention that certain statements prejudicial to defendant's case were made in the presence of the jury and the court should have sustained his motions for a mistrial.

The record shows that most of the evidence complained of was hearsay and cumulative. The trial court sustained all the objections to the testimony complained of and told the jury to disregard it. None of the testimony complained of was so prejudicial to defendant's case that a mistrial would have been justified.

Nor do we agree with defendant's contention that there was no evidence of negligence on his part because plaintiff's evidence did not show how and why the accident happened. The evidence was suffi-

cient to warrant a finding by the jury that the defendant was guilty of negligence which was a proximate cause of the accident.

Finally, defendant argues that the jury's verdict was excessive.

■ There is no fixed rule or standard by which damages can be measured for mental and physical suffering. The amount to be awarded is largely a question for the jury to determine in view of the facts and circumstances of each particular case. Unless the amount of the award is so excessive as to shock the conscience of the court, and to create the impression that the jury was influenced by partiality or prejudice, the verdict of the jury will not be disturbed by us. *Williams Paving Company v. Kreidl,* 200 Va. 196, 204, 104 S.E.2d 758, 764 (1958).

We cannot say that the amount awarded plaintiff for the injuries sustained was excessive.

Since the law of this case fixed the burden of proof as a preponderance of the evidence, and the evidence shows that the plaintiff suffered physical injuries as a result of emotional distress proximately caused by defendant's negligent conduct, the judgment is

*Affirmed.*

HARRISON, J., dissenting.

I would neither abrogate nor modify the impact rule as we have heretofore construed and applied it. The instant case demonstrates its wisdom.

Appellee was frightened and upset by the sight of an automobile accident. Three days later she consulted her family physician complaining of nervousness and other conditions. He apparently did not regard these conditions as so abnormal for three months had elapsed since the birth of her last baby. The doctor prescribed hormones and phenobarbital. He said: "I did not think too much at the time. We all have little incidents that upset us." However, when she continued to be upset he recommended that she visit a psychiatrist.

The psychiatrist diagnosed her problem as "anxiety reaction". The treatment prescribed was a sedative and psychotherapy. He translated the latter to mean "talking with her". Appellee was in his office on five occasions. He said her prognosis "for continued activity and doing the things she should be doing is good unless of course she has some other thing that will stir her up again". He also said "outside" of what appellee told him he would not have known she had an emotional problem, or what caused it.

Applying the majority's relaxed impact rule, I do not consider the evidence of the physicians sufficient to show that appellee's diminishing breasts and the resumption of her menstrual period were the natural result of the fright or shock that she experienced on the night of the accident. The testimony established only emotional distress following a frightening experience. Appellee was not hospitalized, her medical bills totaled only $112, and her recovery was $12,000. I would reverse.