Present:  Hassell, C.J., Lacy, Keenan, Koontz, Kinser, and
Lemons, JJ., and Russell, S.J.

VLADIMIR KONDAUROV, ET AL.                    OPINION BY
                                      SENIOR JUSTICE CHARLES S. RUSSELL
v.  Record No. 042077                       April 21, 2006[1]

EVE I. KERDASHA

            FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                 J. Howe Brown, Jr., Judge Designate
        Upon rehearing pursuant to order entered November 10, 2005


     In this appeal from a judgment for the plaintiff in a

personal injury case, the dispositive question is whether the

jury was permitted to consider non-recoverable elements in

awarding damages for emotional distress.

                              *Facts*

     The facts will be stated in the light most favorable to the

plaintiff, the prevailing party at trial.  On November 16, 1998,

Eve I. Kerdasha, the plaintiff, was driving a Jeep Grand

Cherokee on Route 110 in Arlington County.  She was following a

car driven by her boyfriend, David Postlewaite.  Behind the

plaintiff was a large tour bus belonging to the Embassy of the

Russian Federation (the Embassy) and driven by Vladimir

Kondaurov, an employee of the Embassy acting within the scope of

_____

     [1] The prior opinion rendered September 16, 2005, reported at
270 Va. 356, 619 S.E.2d 457 (2005), was withdrawn and reargument
was granted by the Order of November 10, 2005.

his employment.  The vehicles were all traveling southbound at 55-60 miles per hour.

Traffic ahead of Postlewaite began to slow, evidently because sirens could be heard coming from emergency vehicles about to enter Route 110 from a ramp on the right.  Postlewaite and the plaintiff also slowed, but the bus failed to do so and struck the rear of the plaintiff's Jeep, causing it to strike the rear of Postlewaite's car in turn.  This second impact caused the plaintiff's vehicle to fall over onto its side and skid rapidly into the path of an ambulance coming down a sharply curving ramp onto Route 110.  The ambulance then struck the plaintiff's Jeep with sufficient force that the Jeep "flipped over onto its roof."

The paramedics in the ambulance ran to the plaintiff and found her "hanging upside-down by the seatbelt."  She was conscious but "very upset," "crying . . . and just very shaky." The paramedics asked her if she was hurt and she said "a little bit, that she didn't think she was, but she had a medical condition.  And she kept asking where her dog was, because . . . she had a dog in the car."

The plaintiff had been diagnosed with multiple sclerosis some years before the accident and also suffered from emotional problems including depression and a generalized anxiety disorder.  These conditions sometimes resulted in "stress

2

attacks" that caused her to fall and to lose temporary control of her arms and legs.  About 18 months before the accident, she had acquired a dog, named "Sushi," primarily to help her maintain emotional stability and prevent or moderate her "stress attacks."  She developed a very strong emotional attachment to the dog.  Her psychiatrist described the relationship as "like a mother/child unit."  A witness testified that the plaintiff and Sushi "were inseparable. . . . Sushi was Eve's very best friend in the world. . . . [T]he most unconditional source of love in Eve's life, period."

Sushi was not in the Jeep when the witnesses approached it after the impact, having evidently been ejected through the open sunroof or a broken window.  Postlewaite saw the dog running south on Route 110 but was unable to catch it.  He noticed that its tail had been "cut."  He approached the plaintiff, who told him to "just go find Sushi."  Postlewaite saw the plaintiff in the hospital some two hours later and noticed that she was "very upset" and "reiterated that she wanted me to find Sushi."  After a long search, Postlewaite found the dog in a veterinary hospital where some kind person had taken her after finding her wandering about in a residential area.  The dog's tail had been injured and had to be partially amputated.

The plaintiff sustained few apparent physical injuries. She received pain-relieving medications for bruises and

contusions.  She was released from the hospital with a neck brace that she wore for several weeks to relieve cervical stiffness and soreness.  Her symptoms of multiple sclerosis worsened considerably, however, in the months after the accident.  In the opinion of her neurologist, those symptoms were causally related to the emotional trauma she had sustained as a result of the accident.  He testified that, by contrast, "physical trauma seems to have no effect on the course of multiple sclerosis."

*Proceedings*

The plaintiff brought this action for personal injuries against Kondaurov and the Embassy.[2]  The defendants conceded liability and the case was tried to a jury on the sole issue of damages.  The jury returned a verdict for the plaintiff and fixed her damages at $300,000.  We awarded the defendants an appeal.

There are three assignments of error: (1) Whether the trial court erred in denying the defendants' motion to strike the evidence relating to the plaintiff's emotional distress caused by the injury to her dog, (2) whether the court erred in refusing to instruct the jury that damages could not be awarded

---

[2] The case was matured against the Embassy and the Minister of Foreign Affairs for the Russian Federation pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C §§ 1602 through 1611 (2000 ed. & Supp. II 2002).

for emotional distress the plaintiff suffered because of her concern for the dog, and (3) whether the court erred in instructing the jury that the defendants were responsible for all the injurious consequences of their negligence "even though they might not reasonably have been expected to result."

The record of the trial is replete with references to the dog.[3]  In plaintiff's opening statement to the jury, counsel stated that "part of this case, and part of the damages that . . . we're going to present to you, was Sushi was in the vehicle when it was struck. . . . And Sushi flew out of the car. . . . [S]he was gone and missing.  And you will hear from Ms. Kerdasha and her treating psychiatrist . . . about how missing Sushi and not knowing where Sushi was for approximately 14 hours, how that affected Eve."  Defense counsel made no objection to this, but in his opening statement made reference to a deposition wherein the psychiatrist stated that he had treated the dog as well as the plaintiff.

During the plaintiff's case, witnesses testified that the emotional bond between the plaintiff and her dog was extremely close.  Several witnesses stated that the dog suffered such a

---

[3] Sushi attended the trial.  Plaintiff's counsel represented that she was a "service dog" as defined in Code § 51.5-44(E), and that the plaintiff relied on her for assistance.  The court entered an order, to which the defense agreed, permitting her to accompany the plaintiff on condition that there would be "no growling or hostility toward the defense counsel."

shock as a result of the accident that she would cower under a bed or hide in a closet when she heard a siren outside.  They added that the plaintiff had become distraught because of the dog's condition and would have to go under the bed or into the closet and stay there with the dog to comfort her.  The plaintiff's psychiatrist testified as an expert witness that the plaintiff was "devastated by what happened emotionally and by what happened to her dog."  His opinion was that the effects of the accident had made the plaintiff's underlying depression and anxiety disorder more difficult to treat and had created an "almost catastrophic downhill ride for her," leaving her subject to "feelings of fear, feelings of danger, feelings of terror, cinematic tension, tremor, motor tics."

Defense counsel made no objection to this evidence as it was presented, but at the close of the plaintiff's case, moved the court to strike the evidence insofar as it related to "the condition of the dog [or] fear arising out of loss of the dog. . . . [T]he law is very clear that there can be no emotional distress, anxiety damages flowing from witnessing . . . injury to another."  The court denied the motion.  Defense counsel renewed it at the close of all the evidence and it was again denied.

The defense tendered the following instruction:

## Instruction T

The Court instructs the jury that in considering the question of the Plaintiff's damages, the law of Virginia provides that Plaintiff may not recover for emotional or mental anguish she claims to have suffered either because of her concern for her dog's injuries in the accident or because of her concern for the dog's physical or emotional condition thereafter.

The court sustained the plaintiff's objection to that instruction and refused it. The plaintiff offered the following instructions:

## Instruction No. 8

In determining the damages to which EVE KERDASHA is entitled, you shall consider any of the following which you believe by the greater weight of the evidence was caused by the negligence of the Defendant, VLADIMIR KONDAUROV.

(2) Any bodily injuries she sustained and their effect on her health according to their degree and probable duration;

(3) any physical pain and mental anguish she suffered in the past and any that she may be reasonably expected to suffer in the future;

(4) any disfigurement or deformity and any associated humiliation or embarrassment;

(5) any inconvenience caused in the past and any that probably will be caused in the future;

(6) any medical expenses incurred in the past;

(7) any veterinary bills incurred in the past.

Your verdict shall be for such sum as will fully and fairly compensate EVE KERDASHA for the damages sustained as a result of VLADIMIR KONDAUROV'S negligence.

7

## Instruction No. 12

If you find that the Plaintiff, EVE KERDASHA had a condition before the accident that was aggravated as a result of the accident or that the pre-existing condition made the injury she received in the accident more severe or more difficult to treat, she may recover for the aggravation and for the increased severity or difficulty of treatment, but she is not entitled to recover for the pre-existing condition.

## Instruction No. 15

The defendants are liable for all the injurious consequences to the plaintiff which naturally resulted from the defendant's act, and it is immaterial that all such consequences might not reasonably have been expected to result.

The defense made no objection to Instructions 8 and 12, but objected to Instruction 15 on the ground that all the elements of damages the plaintiff was entitled to recover were fully covered by Instructions 8 and 12 and that in the circumstances of this case, Instruction 15 would "open up their consideration of anything she considers injurious." The court overruled the objection and granted all three of the plaintiff's tendered instructions.

On appeal, the defense argues that the trial court improperly permitted the jury to award damages to compensate the plaintiff for her emotional distress arising from concern for her dog while it was missing, as well as anguish over its injuries and its condition after the accident. The defense contends that under our law, an animal, however beloved it may

8

be to its owner, is personal property.  The defense argues that the measure of damages for an injury to personal property is the difference in its fair market value before and after the injury, and that its sentimental value to the owner cannot be recovered.

The plaintiff contends that the defense waived that argument by failing to make a contemporaneous objection in the trial court when evidence concerning the dog's unique value to the plaintiff was being offered.  The plaintiff argues that in any event, her pleadings never claimed any damages for her emotional distress over the dog's condition.  She says that the court's rulings only permitted the jury to take into account the totality of the circumstances of the accident to permit a fair assessment of the emotional distress she suffered.  She says that the testimony concerning the dog was offered only to show aggravation of her pre-existing medical and mental conditions.

## *Analysis*

### *Waiver*

Our contemporaneous objection rule, expressed by Rule 5:25, provides:  "Error will not be sustained to any ruling of the trial court . . . unless the objection was stated with reasonable certainty at the time of the ruling. . . ."  An objection to the admissibility of evidence must be made when the evidence is presented.  The objection comes too late if the objecting party remains silent during its presentation and

9

brings the matter to the court's attention by a motion to strike made after the opposing party has rested. Poole v. Commonwealth, 211 Va. 258, 259-60, 176 S.E.2d 821, 822-23 (1970). On the other hand, an objection to the sufficiency of the evidence is properly made by a motion to strike, rather than when the evidence is first offered. Id. Obviously, the objecting party cannot be sure, nor can the court decide, until the offering party has rested, whether the various fragments of evidence have added up to a justiciable whole. See Vasquez v. Mabini, 269 Va. 155, 162-63, 606 S.E.2d 809, 812-13 (2005).

Here, the plaintiff was entitled to show the totality of the circumstances of the accident. The evidence concerning what happened to the dog during the collisions was admissible to show their violence and severity. Defense counsel was justified in allowing it to be presented without objection. His motion to strike challenged the sufficiency of the evidence only to establish a particular element of damages, and thus was timely. It was made as a predicate for the limiting instruction (Instruction T) that was later offered to preclude an award of damages for emotional distress arising from the plaintiff's concern for the dog. That is a position the defense maintained consistently throughout the trial and it involves a question we have not previously decided. The motion to strike thus met one of the primary purposes of the contemporaneous objection rule:

10

To afford the trial judge a fair opportunity to correct errors while the case is still before the trial court.  See Vasquez, 269 Va. at 163, 606 S.E.2d at 813.  We hold that the defendants' position on appeal was not waived.  For the reasons stated below, however, the trial court did not err in denying the motion.

*Emotional Distress*

*(1) Background*

We have held, for well over a century, that mental anguish may be inferred from bodily injury and that it is not necessary to prove it with specificity.  Norfolk & W. Ry. Co. v. Marpole, 97 Va. 594, 599-600, 34 S.E. 462, 464 (1899).  Mental anguish, when fairly inferred from injuries sustained, is an element of damages.  Bruce v. Madden, 208 Va. 636, 639-40, 160 S.E.2d 137, 139 (1968).

In the present case, the plaintiff suffered physical injury, albeit remarkably slight under the circumstances, as a proximate result of the defendants' negligence.  Thus, mental anguish could be inferred by the jury and would constitute an element of damages.  The plaintiff makes no claim, however, that her mental state after the accident, and the deterioration of her physical condition, resulted from her relatively slight bodily injuries.  Her claimed damages relate almost entirely to emotional trauma suffered as a result of the accident.  The

11

question remains: What, if any, limitations apply to the sources of emotional distress for which the plaintiff may be compensated in damages?

*(2) Instruction T*

Here, the plaintiff was clearly entitled to be compensated in damages for any emotional distress she suffered as a consequence of the physical impact she sustained in the accident. Such distress might include shock and fright at being struck three times, turned over, left hanging upside down in her seatbelt and experiencing physical pain. It might also include anxiety as to the extent of her injuries, worry as to her future well-being, her ability to lead a normal life and to earn a living. It might include fear of disability, deformity, or death. Such factors were proper subjects for the jury's consideration because they might fairly be inferred from the physical impact of the collisions upon her person. They might also be taken into account as factors causing exacerbation of her pre-existing mental and physical conditions.

Injury to, or loss of, a plaintiff's personal property, as a result of a defendant's negligence, stands upon a different footing. Damages for such losses are confined to the diminution in the value of the property resulting from the accident, plus reasonable and necessary expenses incurred. White Consolidated Industry v. Swiney, 237 Va. 23, 30, 376 S.E.2d 283, 287 (1989).

It is beyond debate that animals, particularly dogs and cats, when kept as pets and companions, occupy a position in human affections far removed from livestock.  Especially in the case of owners who are disabled, aged or lonely, an emotional bond may exist with a pet resembling that between parent and child, and the loss of such an animal may give rise to grief approaching that attending the loss of a family member.  The fact remains, however, that the law in Virginia, as in most states that have decided the question,[4] regards animals, however

---

[4] Most jurisdictions deny recovery of damages for emotional distress arising from injury or death of animals caused by ordinary negligence on the ground that animals are, at common law, and sometimes by statute, deemed personal property.  See, e.g. Mitchell v. Heinrichs, 27 P.3d 309 (Alaska 2001); Roman v. Carroll, 621 P.2d 307 (Ariz. Ct. App. 1980); Pantelopoulos v. Pantelopoulos, 869 A.2d 280 (Conn. Super. Ct. 2005); Nichols v. Sukaro Kennels, 555 N.W.2d 689 (Iowa 1996); Krasnecky v. Meffen, 777 N.E.2d 1286 (Mass. App. Ct. 2002); Koester v. VCA Animal Hospital, 624 N.W.2d 209 (Mich. Ct. App. 2000); Fackler v. Genetzky, 595 N.W.2d 884 (Neb. 1999); Harabes v. Barkery, Inc., 791 A.2d 1142 (N.J. Super. Ct. App. Div. 2001); Fowler v. Town of Ticonderoga, 516 N.Y.S.2d 368 (N.Y. App. Div. 1987); Strawser v. Wright, 610 N.E.2d 610 (Ohio Ct. App. 1992); Daughen v. Fox, 539 A.2d 858 (Pa. Super. Ct. 1988); Miller v. Peraino, 626 A.2d 637 (Pa. Super. Ct. 1993); Petco Animal Supplies, Inc. v. Schuster, 144 S.W.3d 554 (Tex. App. 2004); Pickford v. Maison, 98 P.3d 1232 (Wash. Ct. App. 2004); Julian v. De Vincent, 184 S.E.2d 535 (W. Va. 1971); Rabideau v. City of Racine, 627 N.W.2d 795 (Wis. 2001).  But see Campbell v. Animal Quarantine Station, 632 P.2d 1066 (Haw. 1981). Some jurisdictions expressly permit recovery of damages for emotional distress in cases of animals injured or killed by willful, intentional, or outrageous torts.  See, e.g., La Porte v. Associated Independents, Inc., 163 So.2d 267 (Fla. 1964); Gill v. Brown, 695 P.2d 1276 (Idaho Ct. App. 1985); Burgess v. Taylor, 44 S.W.3d 806 (Ky. Ct. App. 2001); Brown v. Crocker, 139 So.2d 779 (La. Ct. App. 1962).

beloved, as personal property. The General Assembly, in Code § 3.1-796.127, expressly declared: "All dogs and cats shall be deemed personal property. . . ." That section also provides the remedy for the injury of such an animal by allowing the owner "to recover the value thereof or the damage done thereto in an appropriate action at law. . . ." Our decisions have never approved an award of damages for emotional distress resulting from negligently inflicted injury to personal property,[5] and the General Assembly, having had such an opportunity when considering Code § 3.1-796.127, evidently declined to do so. We conclude that permitting such an award would amount to a sweeping change in the law of damages, a subject properly left to legislative consideration. It follows that the defendants' Instruction T correctly stated the existing law and that the trial court erred in refusing it.

### (3) *Instruction 15*

The defendants objected to Instruction 15 on the grounds that it was repetitive of Instructions 8 and 12 and that it would permit the jury to award damages for "anything that [the

---

[5] In C & O Ry. Co. v. May, 120 Va. 790, 797, 92 S.E. 801, 803 (1917), we approved an instruction telling the jury that the owners of personal property destroyed by a defendant's negligence (family portraits, in that case) were not entitled to recover "any sentimental value attached to it by the owners or any peculiar value which they may have attached to the property by reason of association or the like."

plaintiff] considers injurious." We agree that the instruction duplicated matter fully covered in Instructions 8 and 12.

Instructions 8 and 12, given without objection and not challenged on appeal, have become the law of the case, applicable, if the evidence supports them, to any future proceedings on remand. An instruction given without objection will not be disturbed on appeal, Rule 5:25, and becomes the law of the case, governing all subsequent proceedings. "Under [the] law of the case doctrine, a legal decision made at one [stage] of the litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time." Virginia Vermiculite, Ltd. v. W.R. Grace & Co.-Conn., 108 F.Supp.2d 549, 609 (W.D. Va. 2000).

It is axiomatic that a party is entitled to an instruction that fully expresses his theory of the case, if it correctly states the law and is supported by evidence, but he is not entitled to have it repeated or emphasized by the court. See Medlar v. Mohan, 242 Va. 162, 168-69, 409 S.E.2d 123, 127 (1991). Given without the limitation on its scope that Instruction T would have provided, Instruction 15, in the circumstances of this case, was an overbroad statement of the law of damages. Because Instruction 15 was redundant and not so

15

limited by other instructions, it improperly permitted the jury to award damages for the plaintiff's mental anguish arising from her concern for the dog, and thus the court erred in granting it.

### *Conclusion*

The defendants' motion to strike raised a question of law, not previously decided in Virginia, that the trial court, in its discretion, could properly reserve for determination at the stage of jury instructions. There was, therefore, no error in the court's decision to deny it and revisit the question at a later stage of the trial. The court did, however, for the reasons stated, err in denying Instruction T[6] and in granting Instruction 15.

Accordingly, the judgment of the trial court will be reversed and the case remanded for further proceedings consistent with this opinion, limited to the issue of damages.

Reversed and remanded.

---

[6] Instruction T constitutes a limitation on Instructions 8 and 12. Therefore, if it is offered again during proceedings on remand, it should be preceded by: "Notwithstanding any other instructions given by the court," or words of similar import.