COURT OF APPEALS OF VIRGINIA

Present:    Judges Beales, Causey and White
Argued by videoconference


BH MID-ATLANTIC INC.,
  T/A BLUE HAVEN POOLS
                                                         MEMORANDUM OPINION* BY
v.       Record No. 0750-24-4                            JUDGE RANDOLPH A. BEALES
                                                         MARCH 10, 2026
LISA DODD


UPON A REHEARING

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Jeanette A. Irby, Judge Designate

Dirk McClanahan (McClanahan Powers, PLLC, on briefs), for
appellant.

Fred A. Mendicino (Brian M. Silver; Faughnan Mendicino, PLLC,
on brief), for appellee.


BH Mid-Atlantic Inc. (Blue Haven) appeals the trial court's order entering judgment on

the jury's award of $295,968.20 to Lisa Dodd. Blue Haven lists seventeen assignments of error

regarding the circuit court's judgment, including arguments on the ad damnum clause, the jury

instructions, the sufficiency of the evidence, the standard of care, and other assignments of error that

this Court is unable to reach because they were not preserved, as required under Rule 5A:18.

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

# I.  BACKGROUND[1]

In 2021, Lisa Dodd moved into "the house of my dreams," a riverside home in Colonial Beach.  She wanted to build a pool in the backyard for her young children to enjoy so she began researching companies online, making phone calls, and talking to other residents in the area who had installed pools.  She reached out to Blue Haven to discuss the project.  In January 2022, Blue Haven sales representative Carrie Luttrell came to Dodd's home for a preliminary site visit.  Dodd expressed concern about her property's proximity to the Potomac River and the high water table, but Lutrell assured Dodd that Blue Haven was experienced in the construction of pools— and that the high water table would not pose a problem.

On February 6, 2022, Dodd and Blue Haven entered into a contract for the construction of a pool.  The contract provided that the pool would measure 40 feet by 20 feet, with a maximum depth of 8 feet, 6 inches and a minimum depth of 3 feet, 6 inches.  The contract price was $143,298.  The contract provided that the construction would start within 20 working days after permit approval and would be completed by August 4, 2022.

In early May 2022, after the parties signed the contract but before construction began, both Luttrell and the project manager, Tony Vallone, visited the site and once again assured Dodd that the water table would not be a problem.  Dodd testified, "I asked him was it going to be an issue and he said that it wasn't.  They were well-versed in taking care -- of building pools in similar situations and that he had no concerns."  Consistent with the terms of the contract, Dodd paid Blue Haven $68,000.

The project, however, was plagued with problems from the beginning.  Within hours of breaking ground, Blue Haven hit groundwater and had to stop excavating.  Blue Haven proposed

---

[1] Under "familiar principles of appellate review, we view the facts in the light most favorable to [Dodd], as the prevailing party below." *Price v. Peek*, 72 Va. App. 640, 644 n.1 (2020).

an $11,476 change order to rectify the groundwater issue. The change order proposed raising the pool floor and thereby decreasing its depth from 8 feet, 6 inches to 6 feet, and thickening the depth of the pool walls from seven to twelve inches. Making these changes required more materials and two additional days of labor.

Dodd testified that she was reluctant to allow Blue Haven to continue the work and considered taking her business elsewhere. She asked Vallone what her options were, and if it would be possible to end the contract. She testified that Vallone "told me that I would lose all money up until that point unless I continued on" and that "they would leave the hole as it was. They would not -- they would not restore the hole. It would be -- I would be left with this mud pit in my yard." Dodd testified, "I didn't want to lose $68,000. So, I felt like I -- I was backed into a corner and had to move on." Faced with a decision between "los[ing] $68,000 or . . . continu[ing] on with the change order," Dodd agreed to proceed under the terms of the change order. She approved the change order on May 27, 2022.

On June 6, 2022, Blue Haven restarted the excavation. On July 12, 2022, Blue Haven began the gunite application,[2] and, in compliance with the terms of the contract, Dodd wrote a check for $67,899 that morning and gave it to the job superintendent, Tom Roan. That same day, Dodd emailed Blue Haven to express her worry and concern that Blue Haven would not complete the project on time or as the parties had agreed.

Two days later, on July 14, 2022, Dodd sent another email that comprehensively outlined Blue Haven's breaches to date and Dodd attached a picture of the unfinished pool. Her complaints—outlined in the email—included: the lack of a projected completion date; Blue Haven's failure to begin work within 20 days of the issuance of the permits; Blue Haven's

---

[2] Gunite is a sprayable form of concrete.

employees' damage to her driveway; Blue Haven's misrepresentations about the water table; and Blue Haven's general lack of communication with her.

That same day, July 14, 2022, Dodd stopped payment on the July 12 check, and received a phone call from Frank Firetti, the president of Blue Haven. Dodd testified that she "felt very threatened. He told me in this phone call that he had been to court eight times recently and had won all of them. And I just needed to turn the money loose."

On July 19, 2022, counsel for Blue Haven sent Dodd a letter demanding that she pay $67,909 by July 26 or face a lawsuit. Fearing the threat of legal action, and considering that she had already spent $68,000, Dodd "released payment and hoped that they would work with me to finish my project."

Blue Haven returned to continue the work in August. Dodd observed that the pool shell was now elevated 15-18 inches above the ground—more than the 12 inches she had agreed to— and noted "many, many cracks" in the pool floor and sidewalls. Dodd "raised the concern to Blue Haven" but "didn't get any answers."

By November, the pool was still unfinished—far exceeding the August 4, 2022 deadline in the contract, and Dodd learned that the pool did not comply with Westmoreland County's requirement that the pool be set back five feet from the property line. Dodd reached out to the county planner, Darrin Lee, who visited the site and confirmed that the pool appeared to be in violation as it was only four feet from the property line. Lee wrote in an email to Blue Haven, "I was able to visit the site today. The outer perimeter of the pool is a bit too close to the property line. A 5 foot setback is required for accessory structures (pool), whereas the outer edge of the pool is 4 feet from the property line." To bring the pool into compliance with the setback requirement, Blue Haven would have to restructure the pool by demolishing and moving the

noncompliant wall. However, the pool remained in the same state as it was in August—unfinished, cracked, and in possible violation of the county's setback requirement.

By January 2023, Dodd had spent $147,982 on the pool. She testified that she was "beyond frustrated. I contracted for a pool. I agreed to change orders that I didn't want to, but I felt like I was backed into a corner. I did everything that I was supposed to do." She gave Firetti the option of either completing it as they had originally contracted or filling in the hole and returning her money. Dodd testified that Firetti replied that "only a judge will tell him [Firetti] what to do." Dodd reached out to another contractor, Pool Works, who estimated that replacing the existing unfinished pool with a new pool would cost $217,743.

On February 21, 2023, Dodd filed suit against Blue Haven in the Prince William County Circuit Court, alleging one count of breach of contract (Count I), and one count of violation of the Virginia Consumer Protection Act (Count II). The complaint alleged that Blue Haven "represented to Dodd that it had the requisite experience and expertise to design and construct the pool" and that "its design and construction work would meet all applicable regulatory and code requirements." Under Count I, Dodd alleged that Blue Haven "performed its design and/or construction work concerning Dodd's pool defectively and not in accordance with the parties' written agreement." She sought "$192,984.10, plus the cost of related engineering work, interest, attorneys' fees, court costs, and such other and further relief as this Court shall deem appropriate." This figure represented the $147,984.10 she had spent to date on the pool plus an estimated $45,000 that it would cost to remove the defective work.

Under Count II, Dodd alleged that Blue Haven misrepresented its experience and "expertise in local building conditions" and that their "work was not performed in a manner that was consistent with" the experience they told Dodd that they possessed. Dodd also alleged that Blue Haven "made misrepresentations to Dodd through the use of an invoice/change order."

Under Count II, Dodd also sought "$192,984.10, plus the cost or [sic] related engineering work, plus treble damages, interest, attorneys' fees, court costs, and such other and further relief as this Court shall deem appropriate."

At trial, Dodd testified that she chose Blue Haven because of their alleged expertise in building pools in local conditions, such as near the Potomac River. She also testified that in choosing Blue Haven to build the pool, she specifically relied on Lutrell's assurances that the high water table would not pose a problem. She testified that when Vallone visited the property before construction began, he also reassured her that the high water table would not be a problem and told her that Blue Haven was "well-versed in taking care -- of building pools in similar situations." She testified that after the crew hit ground water and Blue Haven proposed the change order, when she expressed doubt to Vallone as to whether she would continue with Blue Haven, Vallone told her "that I would lose all money up until that point unless I continued on."

Dodd also presented testimony from Westmoreland County Building Inspector Jason Wilson, who testified that the "as constructed pool" did not comply with the design that Blue Haven had submitted for approval to the County. He testified that Blue Haven would have had to submit revised plans to the County, which they never did. Westmoreland County Zoning Administrator Beth Ann McDowell similarly testified that a planner from the County visited the site on November 22, 2022, and noted that the pool appeared to violate the County's five-foot setback requirement.

William Gaspar, an engineer hired by Dodd to independently assess Blue Haven's work, also testified. He visited the site in October 2022 and observed cracks in the concrete. He testified that such cracks could pose problems for Dodd in the future, such as "[t]he pool leaking, [or] the pool losing subgrade because of the leaks of the pool itself." He testified that the cracks typically result from "the curing process and the elements" of nature.

- 6 -

Dodd also presented testimony from David Brokamp of Pool Works, another pool construction company. Dodd had hired Pool Works to create an estimate for the "construction and removal of the existing shell." Brokamp testified that Pool Works estimated that it would cost Dodd $217,743 to build a pool that conformed with the specifications in Dodd's original contract with Blue Haven. The Pool Works proposal was admitted into evidence as a business record.

At the close of Dodd's evidence, Blue Haven moved to strike. Counsel for Blue Haven argued that "the lynchpin misrepresentations that are being asserted are -- are not in any way those that are asserted in the complaint." The trial court denied the motion to strike, holding that Dodd had "certainly plead[ed] with enough specificity that anyone could read it and understand what happened here, and what the basis for the complaint is." At the conclusion of all of the evidence, Blue Haven renewed its motion to strike. The circuit court again denied the motion to strike.

The jury received two instructions on the issue of damages:

**Instruction No. 17: Damages: Direct.**

If you find your verdict for the plaintiff, then she is entitled to recover as damages all of the losses she sustained that are a natural and ordinary result of the breach and that she has proved by the greater weight of the evidence.

**Instruction No. 23: Damages under the Virginia Consumer Protection Act**

If you find your verdict for the Plaintiff on its claim under the Virginia Consumer Protection Act, you shall determine whether or not the Defendant's misrepresentation was willful. If you find that the Defendant's misrepresentation was willful, you may increase the amount of damages you award to the Plaintiff to an amount not exceeding three times the actual damages sustained.

The jury returned a verdict for Dodd and awarded Dodd $147,984.10 in damages. They also found that Blue Haven had willfully violated the VCPA and awarded Dodd an additional $147,984.10 in partial treble damages.

The trial court entered final judgment on that award on April 5, 2024. Blue Haven moved for remittitur, arguing that the complaint's use of the phrase "treble damages" was not sufficiently specific to permit an award. Blue Haven asserted that Dodd could only recover the $147,984.10 in compensatory damages because the ad damnum specified $192,984.10 in damages and failed to request a specific amount for the VCPA claim. Blue Haven also challenged the trial court's findings that Dodd's evidence was sufficient to support an award. The trial court denied all of Blue Haven's post-trial motions. Blue Haven now appeals to this Court.

## II. ANALYSIS

### The Ad Damnum Clause

In its second assignment of error, Blue Haven argues, "The Circuit Court erred when it did not grant and/or sustain [Blue Haven's] posttrial motions for remittitur, motion for judgment notwithstanding the verdict, or, alternatively, motion to vacate [the] jury verdict and to set a new trial." In its third assignment of error, Blue Haven argues, "The Circuit Court erred when it entered the final order[,] granted judgment for Plaintiff, Lisa Dodd, and entered damages in Plaintiff's favor, including damages in excess of the amount contained in the pleadings." In its fourth assignment of error, Blue Haven also argues, "The Circuit Court erred when it allowed treble damages to be presented to the jury." In its fifth assignment of error, Blue Haven further argues, "The Circuit Court erred when it did not grant the motion to strike and/or renewed motion to strike on the issue of treble damages." Furthermore, in its sixth assignment of error, Blue Haven also argues, "The Circuit Court erred when it did not remittitur [sic], grant judgment notwithstanding the verdict, and/or vacate the jury verdict and/or final order based upon the post-trial motions regarding the issue of treble damages."

The VCPA provides, in relevant part:

> Any person who suffers loss as the result of a violation of this
> chapter shall be entitled to initiate an action to recover actual

damages, or $500, whichever is greater. If the trier of fact finds that the violation was willful, it may increase damages to an amount not exceeding three times the actual damages sustained, or $1,000, whichever is greater.

Code § 59.1-204(A).

"It is elementary that one cannot recover a greater amount than he sets out or claims in an action brought by him." *Lee v. Spoden*, 290 Va. 235, 253 (2015) (quoting *West v. Anderson*, 186 Va. 554, 563 (1947)). "[I]n an action sounding merely in damages, a plaintiff cannot recover more damages than he demands, although he may [recover] less." *Id.* (alterations in original) (quoting *Hook v. Turnbull*, 10 Va. (6 Call) 85, 86 (1806)). "This concept is grounded in the notion that '[t]he plaintiff ought to know what are the damages he has sustained, and if he [claims] none, he cannot say that he has sustained any." *Id.* (alterations in original) (quoting *Stephens v. White*, 2 Va. 203, 212 (1796)). "Every complaint requesting an award of money damages must contain an ad damnum clause stating the amount of damages sought." Rule 3:2(c)(ii); *Lee*, 290 Va. at 253 (recognizing that "an award cannot be sustained where the complaint does not include an ad damnum clause"). It is well-settled that we review the sufficiency of an ad damnum clause de novo because "the sufficiency of appellant['s] pleading presents 'pure questions of law.'" *Va. Mfrs. Ass'n v. Northam*, 74 Va. App. 1, 12 (2021) (quoting *Philip Morris USA Inc. v. Chesapeake Bay Found., Inc.*, 273 Va. 564, 572 (2007)).

The ad damnum clause in Dodd's complaint specified an amount of $192,984.10 in damages—plus additional "treble damages" for Dodd's VCPA claim. *See* Rule 3:2(c)(ii). Blue Haven acknowledges in its brief to this Court that "treble damages" means an award "up to three times actual damages," reflecting the award structure permitted by the VCPA. Blue Haven also acknowledges in its brief that the ad damnum clause in Dodd's complaint specified an "amount of at least $192,984.10," plus "treble damages." Thus, Blue Haven had notice of the potential total damages at stake in Dodd's suit. Although Blue Haven insists that "the amount of damages" must

be stated as a number, Blue Haven cites no Virginia appellate or statutory authority to support that proposition.[3]  Following the trial, the jury awarded Dodd $147,984.10 in damages, plus an additional $147,984.10 in partial punitive "treble damages" for Dodd's VCPA claim—an amount that clearly falls within the amount requested in the ad damnum clause in Dodd's complaint (i.e., an "amount of at least $192,984.10" plus "treble damages").  Consequently, we find no error in the trial court's denial of Blue Haven's motion for remittitur and no error in Blue Haven's second, third, fourth, fifth, and sixth assignments of error.

Rule 5A:18

In their seventh and eighth assignments of error, Blue Haven argues that the circuit court erred in denying their motions to strike and motion for judgment notwithstanding the verdict because Dodd relied on "misrepresentations allegedly attributed to the Defendant" that Blue Haven alleges "were not identified in the Compl[ai]nt or interrogatories."  Specifically, Blue Haven takes issue with Dodd's allegations (1) that Vallone said that she had to proceed with the change order or lose her money to that point, and (2) that Blue Haven employees assured Dodd that the high water table would not pose a problem.

Rule 5A:18 provides:

> No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable

---

[3]  In addition, Blue Haven cites to no legal authority in support of its first and seventeenth assignments of error.  In its first assignment of error, Blue Haven argues, "The Circuit Court erred when it did not grant and/or sustain Plaintiff's motion to strike and/or renewed motion to strike on all issues raised."  In its seventeenth assignment of error, Blue Haven argues, "The Circuit Court erred when it overruled Defendant's objections and permitted the witness from Pool Works to testify and did not strike the testimony, including the Pool Works[] Proposal for a new pool and damages."  As this Court has repeatedly stated, "Rule 5A:20(e) requires that an appellant's opening brief contain '[t]he principles of law, the argument, and the authorities relating to each question presented.'  Unsupported assertions of error do not merit appellate consideration." *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017) (alteration in original) (quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734, 660 (2008)).  We therefore find these two assignments of error to be waived on appeal.

this Court to attain the ends of justice. A mere statement that the judgment or award is contrary to the law and the evidence is not sufficient to preserve the issue for appellate review.

Although Rule 5A:18 contains exceptions for good cause or to meet the ends of justice, Blue Haven has not argued either exception to us on appeal, and we will not invoke them *sua sponte*. *See Spanos v. Taylor*, 76 Va. App. 810, 827-28 (2023) (stating that when an appellant "has not invoked either exception to Rule 5A:18," this Court "do[es] not consider them *sua sponte*").

"Rule 5A:18 ordinarily permits review of an error only if 'an objection was stated with reasonable certainty at the time of the ruling.'" *Richardson v. Commonwealth*, 67 Va. App. 436, 441 (2017). "Not just any objection will do. It must be both *specific* and *timely*." *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011) (emphases in original). A specific, contemporaneous objection "provides the opposing party an opportunity to address an issue at a time when the course of the proceedings may be altered in response to the problem presented." *Shelton v. Commonwealth*, 274 Va. 121, 126 (2007).

"[A]n objection to the admissibility of evidence must be made when the evidence is presented. The objection comes too late if the objecting party remains silent during its presentation and brings the matter to the court's attention by a motion to strike made after the opposing party has rested." *Bitar v. Rahman*, 272 Va. 130, 139 (2006) (quoting *Kondaurov v. Kerdasha*, 270 Va. 356, 364 (2005)).

Here, Blue Haven did not make timely objections to these statements. It argues on appeal that because these two statements were not encapsulated within the allegations in Dodd's pleadings, they should not have been put before the jury. In other words, Blue Haven objects to the admissibility of these statements. However, it did not contemporaneously object to Dodd's statements on the witness stand that "[h]e [Vallone] told me that I would lose all money up until that point unless I continued on." Blue Haven also did not object when Dodd stated, "I asked him was it

- 11 -

[the high water table] going to be an issue and he said that it wasn't." Blue Haven did not object to the admission of these statements until the close of evidence in its motion to strike. Under the Supreme Court's decision in *Bitar*, an objection to the admissibility of evidence made in a motion to strike "comes too late." *Id.* We therefore find Blue Haven's seventh and eighth assignments of error waived on appeal, and we do not reach them.

## Jury Instructions

In their ninth and eleventh assignments of error, Blue Haven argues that the circuit court erred in its issuance of jury instructions because "there was not a separate VCPA damages jury instruction" and because the "jury should have had a VCPA damages instruction submitted." It further argues that "there was not a separate VCPA damages jury instruction (other than for treble damages). Thus, the ONLY jury instruction on damages was a direct damages instruction." (Emphasis in original).

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019) (quoting *Darnell v. Commonwealth*, 6 Va. App. 485, 488 (1988)). "We review a trial court's decisions in giving and denying requested jury instructions for abuse of discretion." *Holmes v. Commonwealth*, 76 Va. App. 34, 53 (2022) (quoting *Conley v. Commonwealth*, 74 Va. App. 658, 675 (2022)). "[W]hether a jury instruction accurately states the relevant law is a question of law that we review de novo." *Watson v. Commonwealth*, 298 Va. 197, 207 (2019) (quoting *Payne v. Commonwealth*, 292 Va. 855, 869 (2016)).

The VCPA provides:

> Any person who suffers loss as the result of a violation of this chapter shall be entitled to initiate an action to recover actual damages, or $500, whichever is greater. If the trier of fact finds that the violation was willful, it may increase damages to an

- 12 -

amount not exceeding three times the actual damages sustained, or $1,000, whichever is greater.

Code § 59.1-204(A).

The jury received the following instructions about damages:

**Instruction No. 17: Damages: Direct.**

If you find your verdict for the plaintiff, then she is entitled to recover as damages all of the losses she sustained that are a natural and ordinary result of the breach and that she has proved by the greater weight of the evidence.

**Instruction No. 23: Damages under the Virginia Consumer Protection Act**

If you find your verdict for the Plaintiff on its claim under the Virginia Consumer Protection Act, you shall determine whether or not the Defendant's misrepresentation was willful. If you find that the Defendant's misrepresentation was willful, you may increase the amount of damages you award to the Plaintiff to an amount not exceeding three times the actual damages sustained.

The jury instructions adequately described the VCPA and that Dodd could only recover under the VCPA if the jury found that Blue Haven's misrepresentations were willful. Moreover, Jury Instruction 23 specified that the jury could not award more than "three times the actual damages sustained." Thus, we disagree with Blue Haven's assertion that "the jury's verdict is impossible and not supported by the jury instructions." We hold that the trial court did not err in instructing the jury on the damages that it was permitted to award under the VCPA.

Sufficiency of the Evidence

In its tenth, twelfth, thirteenth, and fourteenth assignments of error, Blue Haven argues that Dodd presented insufficient evidence of causation. It argues, "Plaintiff demonstrated no evidence of causation regarding the damages."

"[W]here the trial court has declined to strike the plaintiff's evidence or to set aside a jury verdict, the standard of appellate review in Virginia requires this Court to consider whether the evidence presented, taken in the light most favorable to the plaintiff, was sufficient to support the

- 13 -

jury verdict in favor of the plaintiff." *Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 154 (2009) (alteration in original) (quoting *Bitar*, 272 Va. at 141). The VCPA prohibits certain "fraudulent acts or practices committed by a supplier in connection with a consumer transaction," including "[m]isrepresenting that . . . services are of a particular standard [or] quality." Code § 59.1-200(A)(6). It also prohibits the use of "any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Code § 59.1-200(A)(14).

Dodd presented ample evidence of Blue Haven's misrepresentations and testified that she relied on those misrepresentations in selecting Blue Haven to do the work. She testified that Lutrell assured her that the high water table would not pose a problem. She testified that Vallone also assured Dodd that the water table would not be a problem. Likewise, she testified that Lutrell told her that Blue Haven was "very experienced" in building pools in her area—and that she "picked a contractor that claimed to have local expertise and said that they were familiar with local conditions." We therefore simply cannot say that the evidence was insufficient to support the jury's verdict.

### Standard of Care

In its fifteenth and sixteenth assignments of error, Blue Haven argues that the circuit court erred by failing to grant its motion to strike because Dodd presented "no expert testimony indicating a deviation [from] the standard of care."

Dodd asserted a breach of contract claim and a VCPA claim. She did not assert a negligence claim, nor did she allege that Blue Haven deviated from a standard of care. She was thus not required to present expert evidence on the standard of care.

## III.  CONCLUSION

For all of the foregoing reasons, we do not disturb the trial court's judgment.

*Affirmed.*